GRISSAM A. BAKER, *et al.*, Appellants, *vs.* ANTHONY HENRY, *et al.*, Respondents.

1. *Court—Paper, filing of— What constitutes.*—In legal contemplation the presentation and delivery of a paper to the court 'or officer and its receipt by the clerk and lodgment in his office, constitutes the filing, although the clerk's indorsement is the highest legal evidence of that fact.

2. *Court—Paper, filing of—Proof as to, what sufficient.*—Where it appeared that a report of sale by an administrator, although not with other probate papers, was found among the papers of a deceased clerk, that the court house had been destroyed, and that the records, files, etc., had been moved from thence and shifted from place to place, the proof was on appeal held sufficient to justify the trial court in finding that the instrument had been filed in court, and that the facts contained in the report were as therein recited.

3. *Administrator—Probate court—Orders of—Conflict with report of sale— Case stated.*—Where by an order of the probate court an administrator was directed to sell land on twelve months' time, the deed not to be made but on complete payment of the purchase money, a report of sale by the administrator which recited that the sale was made Feb. 8th, 1860, was held not in conflict with the further order of court made at the May term, 1860, whereby the administrator was permitted to make to the then next term of court a report of the sale theretofore ordered. In such case the purpose of delaying the report was taken to be to enable the administrator to embrace in it not merely a statement of the sale, but of the payments of purchase money made in pursuance thereof.

*Appeal from Bates Circuit Court.*

*A. F. Holcomb & Wm. Page,* for Appellants, cited: Strouse vs. Drennan, 41 Mo. 281 ; Allen vs. Moss, 27 Mo. 364 ; Haley vs. Bagley, 37 Mo. 363 ; Wannall vs. Kem, 51 Mo. 150 ; 41 Mo. 290 ; 48 Mo. 150 ; Garner vs. Tucker, 61 Mo. 427 ; Comm'rs, &c., of Talladega vs. Thompson, 15 Ala. 139.

*Henry Flanagan,* for Respondents, cited : Durfee vs. Moran, 57 Mo. 374 ; Broom's Leg. Max. 942 ; Bank of U. S. vs. Dandridge, 12 Wheat. 64 ; Jones vs. Manley, 58 Mo. 559 ; Wells' heirs vs. Fleming's heirs 29 Mo. 152; Bettison vs. Budd, 21 Ark. 578 ; State vs. Gowen, 7 Eng. [Ark.] 62.

SHERWOOD, Judge, delivered the opinion of the court.

Ejectment for the northwest quarter of the southeast quarter of section 34, T. 41, R. 32.

The answer asserted the validity of the title relied on for the defense, and claimed that Russell B. Fisher had bought the land sued for, at administration sale, duly made in conformity to the forms of law, etc., etc., and had received a deed therefor, paid the purchase money, which was applied to the payment of the debts of the estate—that of John E. Baker, deceased—and that subsequently defendant had bought the land of the heirs of Fisher and entered into possession, etc., and equitable relief was asked.

Plaintiffs were admitted to be the heirs-at-law of John E. Baker, deceased, and the only matter necessary to be solved is the sufficiency of the administration proceedings before referred to.

The deed of the administratrix, Mary A. Baker, to Russell B. Fisher bears date February 8, 1861, and is acknowledged on the day following. It recites in usual terms the order of sale of the land in suit, made at the May term, 1859, the sale thereof on the 6th day of February, 1860, the making of the report at the next May term, its approval thereat, and the payment by Fisher, the grantee, of the purchase money for the land, $80.

The plaintiffs contended, as they do here, that the administratrix had never made report of the sale, and that the same in consequence was never approved, and they, on this ground, attacked her deed to Fisher, and attempted to overthrow the *prima facie* case made by the deed (Wagn. Stat., 98, § 37) by the introduction of the probate records, pertaining to the estate of the decedent, Baker, which show that at the February term, 1859, the administratrix presented her petition for the sale of real estate ; that at the May term, 1859, the law having met with compliance, a sale of the land in controversy was ordered on twelve months' time, the deed not to be executed but on complete payment of the purchase money ; that the record is silent on the subject until the November term of that year (1859) when the sale directed at the May term is renewed ; that the record is again silent till the May term, 1860, when the administratrix is "permitted to make report of the sale of the real estate heretofore ordered to be sold to the next term of this court."

A similar silence, as before observed, then ensued, until the February term, 1861, when " comes the said administratrix, and on her motion it is ordered by the court that she be permitted to make report of sale of certain real estate, ordered to be sold by this court at the May term thereof, 1859."

The defendants, however, on their part, introduced and read in evidence an additional entry from the probate record, showing that, at the May term, 1861, the administratrix made her first annual settlement, wherein, among other things, she charges herself " to amount sale of land $80.00." They also, over the objections of plaintiffs, read in evidence a report of the sale of the land in question, reciting a sale thereof at the time mentioned in the deed to the grantee, and for the price named therein, and that his note with security had been given payable in twelve months for the purchase money as required by the order of sale. This report contains the other customary recitals, and is sworn to in his statutory manner by the administratrix on the 8th day of May, 1860. The objections to this report were various ; that it was not marked " filed ;" that it gave no evidence of having ever been presented to or passed on by the court; was not found among the papers of the estate, nor in the probate office, and that it contradicted the records of the probate court.

We do not regard any of these objections as well founded, and for these reasons ; The mere indorsement by the clerk on the paper is not the sole constituent element of filing that paper ; for in legal contemplation the presentation and delivery of the paper to the court or officer is the filing, which dates from its receipt by the clerk and lodgment in his office, although the clerk's indorsement is the highest legal evidence of the filing; and that indorsement being merely ministerial, is amenable at common law. This was so ruled in the State vs. Gowen (7 Eng. Ark. 62), where following the English precedents it was held that, though the statute of amendments of that State was not applicable to criminal procedure, yet that the omission of the clerk to indorse on indictment " filed," being a mere clerical omission, could be amended and supplied on proof that the indictment constituted a part of the files of the court, delivered together with other indictments to

the clerk at the preceding term for the purpose of being filed. It is true, the report here was not found among the other papers of the probate office, but then it was found among the papers of Stearns, deceased, former county and *ex-officio* probate clerk, and it was shown also, that during the war the court house was destroyed, and the records, files, etc., moved from place to place.

Under these circumstances we cannot regard the action of the trial court in receiving the report as evidence of the facts therein recited as incorrect, and the report being received, gives full support to the recitals of the deed. Nor do we regard the report as contradicting the records of the probate court. For although the administratrix obtained leave at the May term, 1860, to make report of the sale at the next term, this statement is not at all inconsistent with the idea of the report having been at the same time delivered to the clerk for the purpose of receiving the proper indorsement, because it must be remembered in this connection, that the administratrix was expressly forbidden to make a deed to the purchaser until there was complete payment of the purchase money. But the purchase money, according to the terms of the order, was not due till twelve months after the sale, and if the sale, as both deed and report unite in reciting, took place February 6, 1860, then the money was not due until a corresponding period in the ensuing year. It was this consideration, no doubt, which induced the administratrix to ask for, and the court to grant further time in which to make report, not of the mere sale, since the order recognizes the fact that the sale had already occurred, but in regard to the payment of the purchase money ; for there could be no final action taken on the report until it should be ascertained whether or no the money would be paid. That this was the actuating motive which governed these entries, is further borne out by that of the February term, 1861. When the purchase money had fallen due and been paid, and the matter then being in a fit shape for definitive action, the administratrix is then, for the first time, permitted to make report of the full compliance, both on her part and on that of the purchaser, with the order of sale of May, 1859. This view of the true meaning of these entries finds further recognition in that of May,

1861, which, reciting the first annual settlement, shows the administratrix charged with the precise amount mentioned in the deed, and that this arose from the "sale of the land."

Viewing the matter in this light, there is no material inconsistency between the records and the report. And the fact that the sale must needs have met with the approval of the court is shown by the entry last referred to. The statute nowhere requires an affirmative approval of the sale, and disapproval is ordinarily evinced by ordering a new sale. (Wagn. Stat., 98, § 34.)

In Jones vs. Manley (58 Mo. 559) the only data, whereon to base the inference that the sale had been approved, were, that the court, on the application of the administrator ordered that an error in the description of one "forty" of the land sold be corrected, and that on the same day the deed then in question was made and acknowledged in open court before the probate judge himself, who was *ex officio* clerk, and held sufficient to show an approval of the sale.

A similar ruling in Grayson vs. Weddle occurred at the present term.

Finding no error in the record we shall affirm the judgment— which went in favor of the defendants.

Judge Wagner absent; the other judges concur.