## CHAS. J. MEYERS, et al., Appellants, v. T. K. WOOD, et al., Respondents.

Springfield Court of Appeals, July 28, 1913.

1. **TAX BILLS: Sewers: Ordinances Establishing.** The resolution and ordinance providing for a sewer called for a drainage and sanitary sewer and the specifications called for, and the sewer actually constructed was, a sanitary sewer. *Held*, that the tax bills were not invalid, where the ordinance establishing the sewer district and the ordinance contracting with the builder of the sewer provided that the sewer should be built according to the plans and specification on file in the city clerk's office, such plans and specifications being thus made a part of the ordinance, and where the sewer constructed conformed therewith.

2. **CONTRACTS: Provisions: General and Particular: Construction.** Where a particular description or requirement in a contract follows a general description or requirement, the particular one will govern.

3. **EVIDENCE: Plans and Specifications: Oral Testimony.** The date and place of filing of plans and specifications are not conclusively shown by the file mark thereon, but oral testimony is admissible to show the actual facts with reference to when and where they were filed.

4. **SEWERS: Construction of: Competitive Bidding.** That there was only one bid for the construction of a sewer does not make the bidding noncompetitive, provided the law was complied with in establishing the district, pubishing the notice for bids and lettng the contract.

Meyers v. Wood.

5. ————: **Proceedings for Construction of: Review.** Proceedings leading up to and including the making of a contract for the establishment of a sewer are examined and reviewed and *held* to be regular and in accordance with the law.

6. ————: **Confiscation of Property: Not to be Raised in Testing Validity of Tax Bills.** That the building of a sewer was practically a confiscation cf certain property is not a judicial question that may be raised in an attack on the validity of the tax bills.

7. ————: **Construction of: Change of Route.** In the construction of a sewer a change of 1100 feet was made in its line by the city engineer and the street and alley committee of the council, supplemented by an ordinance. The evidence showed that much blasting would have been necessary and much damage would have resulted had the change not been made. *Held,* that such change did not invalidate the tax bills on the ground that it prevented competitive bidding.

8. **PUBLIC IMPROVEMENTS: Change of Plans and Specifications: Substantial Compliance.** In making public improvements a substantial compliance with the law is sufficient, the circumstances in each case determining whether there has been such a substantial compliance. *Held,* that a variation from the specifications which does not materially change the character, location or cost of the improvements, or work a fraud on the public or given an advantage to the contractor or injure the value or appearance of the property, is not sufficient to justify the cancellation of the tax bills by a court of equity.

Appeal from Jasper County Circuit Court, Division No. One.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*J. D. Harris* for appellants

(1) Where a city undertakes to construct a district sewer to be paid for in special tax bills, the proceeding must be set in motion by an ordinance specifying the dimensions, material and character of the sewer, either by setting such matters out on its face or by reference to plans and specifications then on file in a designated office. McCormick v. Moore, 134 Mo. App. 678; Richardson v. Walsh, 142 Mo. App. 328; Dickey

v. Holmes, 109 Mo. App. 721.  (2)  The city council cannot ratify a change in the course of the sewer. The sewer for which the tax bills are issued must be prescribed in the ordinance, upon which the matter is let to public bid.   Dicke v. Holmes, 109 Mo. App. 725; Independence to Use v. Knoepher, 134 Mo. App. 650; Withworth v. Webb City, 204 Mo. 579.  (3)  The power to locate a sewer in a city of the third class is legislative, and cannot be delegated to the city engineer. Withworth v. Webb City, 204 Mo. App. 579; Neill v. Gates, 152 Mo. 594.  (4)  The work must be let on competitive bid and the contract cannot thereafter be changed.   The work must be done under the contract submitted to the competition of bidders, and the successful bidder and the city cannot arrange a differen; contract subsequently.   McQuiddy v. Brannock, 70 Mo. App. 550; Galbreath v. Newton, 30 Mo. App. 393t McCormick v. Moore, 134 Mo. App. 669; Boonville ex rel. v. Stephens, 238 Mo. 339; City of Maryville ex rel. v. Lippman & Ingerson, 151 Mo. App. 447; City of Trenton v. Collier, 68 Mo. App. 490.  (5)  Where there is a change made in the location of the sewer after the contract is let, the city council cannot validate the tax bill by a subsequent ordinance providing that the sewer shall be located upon the new lines.   Neill v. Gates, 152 Mo. 585; Barber Asphalt Co. v. Ridge, 169 Mo. 376; City to use v. Eddy, 123 Mo. 546; McQuiddy v. Brannock, 70 Mo. App. 535; Heidelberg v. St. Francois Co., 100 Mo. 69; Ruggles v. Collier, 43 Mo. 363; Railroad v. Chicago, 174 Ill. 442.  (6)  A city cannot order a sewer constructed, let it to contract on a competitive bid, and then, after the contract is let, change the whole situation by shifting the location to another and different route.   City of Maryville v. Lippman, 151 Mo. App. 452; Neill v. Gates, 152 Mo. 595; Const. of Mo. Art. 2, sec. 15.  (7)  Where the city proposes establishment of a sanitary and drainage sewer at the expense of the property owners in the district, and in

fact only a sanitary sewer is constructed the tax bills are rendered void. Barton v. Kansas City, 110 Mo. App. 31. (8) A suit in equity will lie to cancel the tax bills and remove the cloud from the title. Bayha v. Taylor, 36 Mo. App. 427; Barton v. Kansas City, 110 Mo. App. 35; Potter v. Paving & Construction Co., 214 Mo. 5.

*George W. Crowder* and *McReynolds & Halliburton* for respondents.

(1) In the case at bar, while the ordinance itself only designates the material, it does incorporate into itself the dimensions and details of the sewer to be built, by reference to the plans and specifications on file in the office of the city clerk. St. Joseph v. Landis, 54 Mo. App. 315; Roth v. Hox, 68 Mo. App. 283; Galbreath v. Newton, 30 Mo. App. 380; Akens v. Kohlmeyer, 97 Mo. App. 520; Joplin ex rel. v. Hollingshead, 123 Mo. App. 608. (2) The plans and specifications had been made and were on file in the city clerk's office on the day the city engineer was ordered to advertise for bids, and the file mark on the back of the same was simply a mistake in date. The notation does not make the filing. The file mark is not necessary. Akens v. Kohlmeyer, 97 Mo. App. 529; Grubbs v. Cones, 57 Mo. 83; Baker v. Henry, 63 Mo. 517; State v. Hockaday, 98 Mo. 593. (3) It was competent for the council to amend the original ordinance and change the route of the sewer. City of St. Louis to the use of Fox v. Schoenmann, 52 Mo. 348; Guild v. Andrews, 137 Fed. 371; (4) This contract was let to a competitive bid and the fact that but one person bid does not under the law change the fact that it was a competitive bid, such as the law contemplates. Dubbert v. City of Cedar Falls, 149 Iowa, 489, 128 N. W. 947; City of Platte City to use Pryor v. Paxton, 141 Mo. App. 175.

FARRINGTON, J.—This is a suit in equity brought by the appellants, owners of certain lots in the city of Carthage, against T. K. Wood, a contractor, and the Central National Bank alleged to have an interest in the tax bills in question, the object of which was to have canceled certain tax bills against the property of the appellants, issued by the city of Carthage to the contractor for the construction of a district sewer. Appellants' lots were located within the sewer district. The trial court dismissed the petition and gave judgment for the defendants.

The petition attacks the validity of the taxbills on the following grounds: (1) That the ordinance ordering the construction of the sewer did not prescribe the dimensions, material, or character of the sewer to be constructed. (2) That the ordinance passed on March 25, 1912, calling for plans, specifications, dimensions, etc., "then on file with the city clerk," was invalid for the reason that such plans were not in the office of the city clerk at the time, and that the bid of the contractor showed the plans and specifications to be on file in the city engineer's office. (3) That the proposed improvement was not let to competitive bidding, and that the sewer as completed does not conform to the ordinance, plans and specifications on which the bid was made.

The record before us shows that on March 11, 1912, a resolution was passed by the city council wherein it was stated that it was deemed necessary to establish a sewer district for sanitary and drainage purposes, and in which the city engineer was directed to make an estimate of the cost of the sewer and detailed plans and specifications showing the dimensions, kind of sewer, manholes, lamp holes, flush tanks, inlets, catchbasins, laterals, and all necessary appurtenances. On March 18, 1912, the city council passed an ordinance establishing the sewer district and giving the boundaries thereof. On March 25, 1912, the city engineer was

ordered to advertise for bids, of which advertisement proof of publication was made and no objection is raised with reference to the publication or the form thereof. On March 25, 1912, an ordinance was passed providing for the construction of a sewer in the district in question, and providing that the same should have all the necessary laterals, manholes, flush tanks, junction pieces, connections, and all other appurtenances, the same as that ordered by the ordinance establishing the sewer district. This last-mentioned ordinance located the beginning and ending of the district sewer and the line on which it was to be constructed, and by clause 3 thereof specially provided that it should be built in accordance with the plans and specifications of the city engineer "now on file in the office of the clerk," and provided that these plans and specifications "are hereby made a part of this ordinance."

It is unnecessary to notice anything in the plans and specifications except the following provisions:

"Location.—The sewer shall be located on the lines shown on the plans of the work, and will be staked out by the engineer. The engineer, however, reserves the right to move the line of sewers to the right or left whenever obstructions are met with which render a change of line desirable.

"Protection of water and gas pipes, etc.—The contractor shall do whatever may be necessary to keep in position and to protect from injury all water and gas pipes, lamp posts, service pipes and all other fixtures which may be met with in carrying on the work. In case of any of the said gas or water pipes or any other fixtures being damaged, they may be repaired by the parties having control of them and the expense of such repairs shall be deducted from the amounts which may become due the contractor."

T. K. Wood was the only bidder and his bid was just within the estimate of the city engineer.

An ordinance was passed on May 13, 1912, and ac-- cepted by Wood on May 16, 1912, contracting with Wood for the construction of said sewer, which said ordinance provides that said Wood shall furnish all material and do all work necessary to construct the sewer with all required laterals, manholes, lamp holes, etc., as defined and prescribed by the plans and specifications therefor "now on file with the city clerk," and providing that the plans and specifications are made a part of the contract ordinance. The ordinance, in addition to referring to the plans and specifications, provides the cost per lineal foot for laying pipe, back filling and excavating, and provides for the various depths, and for manholes, lamp holes, flush tanks, and outlets. The contract was let on what is generally termed "unit bidding."

Work was begun on the sewer by the contractor, and when he reached a certain point on Main street along which the line of sewer was established, he encountered, according to the claim of the plaintiffs, a heavy limestone bar, high pressure water and gas pipes which had been laid without being cushioned, and that to go farther along Main street on the line originally laid out would require blasting to such an extent as to be very expensive and there would be great danger of bursting the water and gas mains for which damage the contractor would have to pay. It seems there was also a street car line running along the center of Main street. The evidence shows that when this point on Main street was reached, the city engineer and the street and alley committee of the council—whether on their own initiative, on the request of the contractor, or on the request of the property owners living along Main street, we deem immaterial—agreed to change the line of the sewer so that it would go no further down Main street but would diverge to the alley which was one-half block west of and parallel with Main street and go north down the alley. Then, in accordance

with an agreement to change, the city council by an ordinance passed on July 8, 1912, which was after the work had been started and brought to the point mentioned on Main street, changed the line of the sewer so as to make it connect up and run down the alley instead of down Main street.  The evidence shows that something like $800 was saved the property owners by reason of making this change, and also shows that the line of the sewer per lineal foot was not lengthened, and that the changed line neither cut off nor added to any of the territory originally intended to be drained by this district sewer.  The evidence also shows that the line of this sewer was in no way changed that served the lots belonging to the plaintiffs in this suit, as these lots were located in the bottom somewhat north of the changed line, and the sewer passed by them on the line as originally designated in the ordinance and specifications.

Appellants' first contention is that because the resolution and ordinance providing for the sewer called for a drainage and sanitary sewer when in fact the specifications called for, and the sewer actually constructed was, a sanitary sewer only, would defeat the tax bills.  But as the ordinance establishing the sewer district and the ordinance contracting with the defendant Wood provided that the sewer should be built according to the plans and specifications on file in the city clerk's office and by special provisions made the plans and specifications a part of the ordinance, and as the character of the sewer that was actually constructed met with the plans and specifications, we hold that there is no merit in this contention.  Where a contract mentions in general terms certain things to be done, and then specifies in particular what shall be done, the particular description will govern; and by reference to them, or by special provision as was made in this case, sufficiently makes the plans and specifications a part of the ordinance.  [Galbreath v. Newton, 30 Mo.

App. 380, 392; City of St. Joseph ex rel. Saxton National Bank v. Landis, 54 Mo. App. 315, 324, 325; City of Joplin ex rel. Carthage D. & F. Stone Co. v. Hollingshead, 123 Mo. App. 602, 607, 608, 100 S. W. 506; McCormick v. Moore, 134 Mo. App. 669, 114 S. W. 40; City of St. Joseph to use of Gibson v. Owen, 110 Mo. 445, 19 S. W. 713; Whitworth v. Webb City, 204 Mo. 579, 597, 103 S. W. 86.]

It is next contended that the evidence shows that at the time the bid was made no plans and specifications were on file in the clerk's office, and this because the plans and specifications bear the file mark of the clerk as of April 8, 1912, long after the publication of the advertisement for bids had been made. The evidence, however, of the contractor, city engineer, some of the members of the city council, and in fact the city clerk, convinced the trial court and now convinces this court that the plans and specifications were on file in the clerk's office when the publication was made, and remained there with the files and papers, and that the file mark was an error on the part of the clerk or some one in his office. That the file mark does not govern and that oral testimony is admissible to show the actual facts with reference to when and where the specifications were filed is shown by the following cases: Akers v. Kolkmeyer & Co., 97 Mo. App. 520, 529, 71 S. W. 536; Grubbs v. Cones, 57 Mo. 83; Baker v. Henry, 63 Mo. 517, 519.

It is true that in this case the bid was made by the contractor on a blank form which showed the specifications to be in the city engineer's office, but this was explained by the fact that when the blank was handed to him he failed to strike out the words "engineer's office," and insert the words "city clerk's office."

There is no evidence disclosed by this record of any fraud or collusion or private understanding between the contractor and the city officials. The fact that there was but one bid makes it none the less competitive

provided the law was complied with in establishing the district, publishing the notice for bids, and letting the contract. [City of Platte City to use of Prior v. Paxton, 141 Mo. App. 175, 178, 179, 124 S. W. 531; Dubbert v. City of Cedar Falls, 128 N. W. (Iowa), 947.] We hold that the proceedings leading up to and including the making of the contract with the defendant were regular and conformed to the law.

Plaintiffs attempted to show at the trial of the case that the building of this sewer was practically a confiscation of their property, but it has often been held in this state that this is a question for the lawmaking power in the city to decide and not a judicial question that may be raised in an attack on the validity of the taxbills. Without further discussion of this branch of the case, we refer to the following cases: Prior v. Buehler & Cooney Const. Co., 170 Mo. 439, 71 S. W. 205; Moberly v. Hogan, 131 Mo. 19, 32 S. W. 1014; Heman v. Allen, 156 Mo. 534, 57 S. W. 559; Heman v. Schulte, 166 Mo. 409, 66 S. W. 163.

The most serious phase of this case lies in the contention of the appellants that the changing of the 1100 feet in the line of the sewer from Main street to the alley including the street necessary to connect with the alley, was a change that could not be made by the city engineer and the street and alley committee of the council, supplemented by the ordinance of July 8, 1912, because when made by the street and alley committee or the city engineer it would be an assumption of power by them in connection with the work that must be exercised by legislative act and hence a power that cannot be delegated, and because the ordinance of July 8, 1912, did not cure it for the reason that there was no republication for bids on this ordinance, and was such a change that without beginning over as if it were a new ordinance and a new contract, could not be done by the city council, and because the change from the street, where it was shown that there would have to be much blast-

ing and consequently much damage, to the alley where none of the obstructions were encountered, defeated the right of the property owners to have competitive bidding. In other words, appellants argue that had the line of sewer been laid out where it was actually built, contractors would have known that the many difficulties on Main street would not have to be encountered, and others beside Wood probably would have bid on the work, but that by fixing the line down Main street and getting the one bid and then changing the line in that locality to the alley where no such difficulties, were to be encountered, defeated the very purpose of the right to have competitive bidding.

These contentions all raise but one question and that is concerning the *power* of the city and its officials in making the change to the alley instead of requiring the contract to be carried out and the sewer built along Main street.

The strongest case to which appellants have directed our attention is that of City of Maryville ex rel. Citizen's National Bank v. Lippman, 151 Mo. App. 447, 132 S. W. 47, where the taxbills were adjudged invalid. On reading the opinion, however, it will be noted that the size of the brick was materially changed by the amended ordinance, and the iron dowel pins to connect the curbing were permitted to be left out. The opinion discusses the question, cites authorities, and holds that this change could not be made without a readvertisement. We thoroughly approve the doctrine therein announced. In that case it was properly held that the changes which were allowed were material changes, and they differ from the changing of or deviating from a line of sewer in this that the requiring of dowel pins and the specification of the size of the brick are matters that can be definitely determined at the time the ordinance contracting the work is passed, whereas it is impossible for the contractor or the engineer or the city officials to know exactly what substance

will be encountered in digging a ditch for a sewer. One is a matter of definite ascertainment and the other largely a matter of estimate only. One is known to the city officials and all contractors and the other not definitely known to any of the parties. Certain latitude. in judgment must in all public improvement be left to the officials who are intrusted with the power of seeing that it is done. There is no reason to allow them a discretion or the exercise of their judgment where the thing which they change was and could be definitely known at the time of the letting of the contract. There is a reason, as before stated, why they should be allowed to exercise their judgment when they are dealing with a subject which necessarily develops unknown conditions and predicaments as the work progresses. Indeed, it is truly said that changing the size of a brick one-half inch is a material change because such a change may affect the wearing qualities of the pavement and thereby materially lessen the value of the improvement; but here, the sewer as constructed drains exactly the same territory as the sewer provided for in the ordinance prior to the amendment. In either case it is hidden and hence does not detract from the looks of the property. No more and no less sewer connection can be made in the one case than in the other. No fraud or misconduct is shown on the part of any one, so far as this record discloses, in making the change. To our minds, such change was merely a variation of the plans as originally made, which variation was made to overcome the difficulties found to exist on Main street, and such an exercise of judgment would not for one moment be questioned were it made between private persons. The sewer as constructed served every purpose and use intended under the ordinance and contract as originally made. This court in the case of Stover v. City of Springfield, 167 Mo. App. 328, 152 S. W. 122, held that such a change would not invalidate tax bills, and to the same effect is the

decision of the St. Louis Court of Appeals in the case of Gratz v. City of Kirkwood and Robert Wycoff, 165 Mo. App. 196, 145 S. W. 870.

To meet just such contingencies and to obviate the necessity of doing an expensive and foolish thing when a cheaper and better way to the individual is open, was the purpose of the Legislature in enacting section 9241, Revised Statutes 1909. Acting under this section, the following clause was put in the specifications which were open to all other bidders as well as defendant Wood: "The city council shall have the right to make alterations in the line, grade, plan, form or quality of the work herein contemplated, either before or after the commencement of the work," and a similar clause was also inserted in the ordinance contracting for the work.

The Supreme Court in the case of Cole v. Skrainka, 105 Mo. 303, 16 S. W. 491, held that it would look to the subject-matter of which the ordinance treats, and that merely because the granite blocks had not been cut to the exact nicety of eight inches, such failure on the part of the contractor would not invalidate his contract. And in that case the following language, used in the case of Sheehan v. Owen, 82 Mo. 458, is quoted with approval: "We are not inclined to turn a plaintiff out of court, who has given his time and expended his money in the improvement of their property, on mere technicalities which in no manner affect the substantial rights or interests of the parties. If, in any material respect, the ordinances of the city bearing upon the question involved had been disregarded by the city authorities or the plaintiff, his suit on his taxbill could not be maintained."

So, in the case at bar, if we are to hold the contractor to a literal and strict compliance with his contract, he must necessarily fail because it is said by eminent authorities on the subject that the instruments

of engineers have never been sufficiently accurate to draw a straight line.

The better rule to adhere to is that declared in the case of Trimble v. Stewart, 168 Mo. App. 276, 153 S. W. 1086, that in the work of putting down street improvements, a substantial compliance with the specifications is sufficient, and that whether there has been a substantial compliance depends somewhat upon the circumstances of each case; that a variation from the specifications which does not materially change the character, location or cost of the improvements, or work a fraud on the public, or give an advantage to the contractor, or injure the appearance, or value of the property, is not sufficient to justify the cancellation of the tax bills by a court of equity.

After all, it must be borne in mind that contractors and city authorities are only human; and they should be held to no higher duty in the use of good sense or good judgment than the ordinary run of men. The opinions holding that a strict compliance with the law is necessary in order to bind the tax-payer on a special tax bill, as we read them, mean a substantial, sensible, businesslike compliance—a practical rather than a theoretical compliance—and courts should view these relations as practical men rather than as theorists. Such, at least, is the idea we gather from the able opinions of our Supreme Court in the cases of Porter v. Boyd Paving & Const. Co., 214 Mo. 1, 22, 112 S. W. 235, and Gist v. Rackliffe-Gibson Const. Co., 224 Mo. 369, 123 S. W. 921.

After a careful consideration of the entire record, we are convinced that the judgment was for the right party and it is hereby affirmed. All concur.