HODGES, J.
(dissenting). The judgment in this case is reversed mainly because the court, in effect, submitted to the jury the construction of the contract between Booth and Campbell. It is contended that the contract was in writing, was ambiguous, and the court should have given to the jury whatever legal interpretation was needed. Even if that be an error, it is no reason for reversing the judgment unless it also appeared that the jury was probably misled into finding that Campbell had done nothing in violation of his contract to give Booth the legal right to cancel the lease. If Booth neither pleaded nor proved a case which authorized him to cancel the contract, then the court might have instructed the jury, as a matter of law, that Campbell was wrongfully ejected from the premises.
The following is a summary of the material provisions of the contract:
Booth rented the entire 31-acre tract of land to Campbell for the term beginning December 28, 1919, and ending December 28, 1920, together with a right of way leading to a public road. The consideration was $10 a month, to be paid monthly in advance. Here are the affirmative obligations undertaken by Campbell: (1) To pay the rent monthly in advance; (2) to erect a barn according to certain specifications, within 90 days after he had taken possession; (3) to erect two rooms adjoining the house on the premises within 4 months after taking possession; (4) to ceil, canvas, and paper certain portions of, the house within 5 months after taking possession; (5) to cultivate all of the land then growing in sprouts and timber within the field fence, consisting of 12 acres; (6) to cultivate also all of the land then in cultivation during the year 1920, in a substantial, farmerlike manner; (7) to keep the sprouts cut down on the right of way from the rented premises to the public road. f‘
The following is the provision upon which Booth relies for ejecting Campbell and Ash-more :
“If Campbell shall fail to perform the obligations herein undertaken and pay the rents in advance, such failure shall at Booth’s election cancel this contract, which shall then become null and void.”
In order to support this action to recover the leased premises, and justify the expulsion of Campbell and Ashmore within less than one month after they had taken possession, it devolved upon Booth to plead and prove some default on the part of Campbell which comes .within the meaning of the above provision. The following is the substance of Booth’s complaint, as pleaded: That Campbell and Ashmore had cut and hauled away and appropriated to their own use many beautiful trees growing on the land; that it was the direct purpose and intention of the defendants to destroy, mutilate, *562 cut, and carry away and convert to their own use the valuable timber upon said land, and commit waste, in direct violation of the lease contract; that they did cut and carry away and sell 100 cords of wood, of the reasonable market value of $10 a cord, in direct violation of the contract; that they had failed to pile any brush or prepare the ground for cultivation, but left it in a rough, rude, and unkept condition, unsuitable for cultivation, and it was not at or near the place where the defendants had the privilege of cutting timber and clearing ■ land — • to the plaintiff’s damage in the sum of $1,000.
Booth testified that he visited the premises on the 13th day of January, 1920, and for the first time discovered that Campbell was cutting the timber from the land. On his return home he and Campbell met and had a conversation concerning the manner in which the timber was being cut. He says:
“I hailed Mr. .Campbell as he passed. * * * We both stopped, and I got out of my car and walked back. * * * I told him he was cutting and destroying my timber out there contrary to the contract; that he was not living up to the contract; that I wanted him to desist; arid he said he wouldn’t do it; that he was going to go on and cut that timber and haul it off. Then I told him I was going to send the sheriff out there the next day, and I did. I came back immediately and prepared my original petition and got out my sequestration, and the sheriff served it * * * the next day.”
The question is, Does this pleading, or this testimony, show any default on the part of Campbell that gave to Booth the legal right to cancel the lease? In other words, Does it show that Campbell had failed to perform any of the obligations which he had undertaken? It is true Booth alleged that Campbell had violated the contract, but the only provision it is claimed that was violated is this:
“He (Campbell) shall use no timber except off the land which, he clears and cultivates.”
In legal effect the complaint was that Campbell was cutting and removing timber from land which he was not authorized to clear for cultivation. Suppose we concede that Booth’s construction of the contract regarding Campbell’s timber rights was correct, and that Campbell was cutting timber and removing timber that he had no legal right to take; was that sufficient to authorize Booth to forfeit the lease? No rule of law is better settled than this: The provisions of a contract which gives to one party the privilege of forfeiting á vested interest will be strictly construed; and, where the language employed renders the meaning of the parties uncertain, the doubt will be resolved against the party claiming the right of forfeiture. One who seeks the aid of so harsh a remedy has the burden of showing beyond any reasonable doubt a situation which comes clearly within the meaning, if not within the ■ very language, of the contract. An election to forfeit because of a failure to perform a promise to. pay rent- in advance, to build an addition to the house on the premises, to ceil, canvas, and paper rooms, to put into cultivation certain portions of the land, to cultivate in a farmerlike manner land not theretofore cultivated, cannot be construed to cover a trespass in cutting timber from land which the lessee had no right to invade. A provision designed to secure the performance of affirmative obligations to do something for the benefit of the lessor cannot be extended to include inhibitions against the commission of a tort upon the premises. What Booth charged in his original petition,-and what his testimony tended to prove as a justification for canceling the lease, was not a default in the performance of an obligation, but a trespass committed to Campbell in cutting and removing timber from land not covered by the terms of the lease contract. The provision for a forfeiture was evidently inserted for Booth’s protection, as security for the fulfillment of Campbell’s promises to do the things specified in the contract. This might have been expedient because of Campbell’s insolvency, or his inability to respond in damages for any material default of which he might be guilty. But it would be going to an unreasonable extreme to say that it was contemplated that this election to forfeit the contract might be exercised because of the nonperformance of some minor obligation, such as the failure to do all the papering within the time prescribed, or the failure to clear off all of the sprouts on the land mentioned, or the failure to keep the right of way to the public road cleared, or the failure to cultivate the land in a farmerlike manner. Booth’s rents were to be paid in cash, and did not depend on the yield of the crops grown. The words “and pay the rents in advance” were designedly inserted for a purpose. Their payment in advance had been previously provided for in the first paragraph of the contract, and that promise was clearly included within the general terms, “the obligations herein undertaken.” The repetition following those general terms must have been intended as a limitation upon the right of forfeiture reserved to Booth. By naming a particular obligation the nonperformance of which would constitute a ground of forfeiture, there was a clear indication of an intention that no other obligation, or default, of an inferior grade, or of less importance, should be a ground of forfeiture. Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Meyers v. Woods, 173 Mo. App. 564, 158 S. W. 909; 17 Amer. & Eng. Enc. of Law (2d Ed.) p. 6. A forfei *563 ture was not necessary for the protection of the premises against the unlawful cutting of timber by Campbell. He might have been restrained by a writ" of injunction, and in a proceeding where the parties might have had their contract rights judicially determined.
My conclusion is that both the pleadings of the plaintiff below and his testimony disclosed a case in which Campbell was committing only a trespass upon the premises, and the court might have informed the jury that this did not give the right of forfeiture. That being true, the only question which should have been submitted to the jury'was that of damages which the defendants below were entitled to recover by reason of their wrongful ejection.
I also differ with the majority in sustaining the assignments of error based upon the refusal of the court below to sustain certain special exceptions. I think the judgment should have been here modified and affirmed.