In the Matter of YESHIVA OF SPRING VALLEY, INC., Respondent, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT et al., Appellants.

Second Department, November 23, 1987

APPEARANCES OF COUNSEL

*Greenberg & Wanderman (Carl L. Wanderman* of counsel), for Board of Education of the East Ramapo Central School District, appellant.

*Joseph Deutsch (Ilan S. Schoenberger* of counsel), for Reuben Gittelman Hebrew Day School, appellant.

*Eugene M. Kaufman* for respondent.

## OPINION OF THE COURT

KUNZEMAN, J.

■ This appeal presents the opportunity to decide whether a Board of Education, acting pursuant to Education Law § 403-a, may ignore the monetary offers of a party seeking to lease surplus school property and base its award of the lease solely upon nonmonetary factors. We hold that to do so is impermissible.

During the 1985-1986 school year, the respondent Board of Education of the East Ramapo School District (hereinafter the board) determined that the Bluefield Elementary School was no longer needed for educational purposes and would be made available for rent commencing during the subsequent school year. After reviewing an appraiser's report which determined that the net rental value of the Bluefield Elementary School was $90,735 per year, the board set the fair market value for the lease at $60,000 per year.

On April 16, 1986, a notice concerning the availability of the Bluefield Elementary School was released to the public. The board received acceptable responses from only two parties, the petitioner Yeshiva of Spring Valley, Inc. (hereinafter Yeshiva) and the appellant Reuben Gittelman Hebrew Day School (hereinafter Gittelman). Gittelman had been leasing another school building from the board pursuant to a lease

which was to be terminated by the board at the end of the 1985-1986 school year.

Thereafter, representatives of the board met with both parties in order to discuss the terms of the proposed lease. The board did not indicate at those meetings what factors it would consider in determining which party would be awarded the lease. However, the board did explicitly indicate that it would not take into consideration the willingness of either party to pay rent in excess of the fair market rental value of $60,000 determined by the board, and that offers in excess of that amount would not be entertained.

Both parties submitted memoranda to the board in support of their applications for the lease. The Gittelman presentation stated that it had an enrollment of 327 children, of whom 40% lived in the district, and that it would be required to close its operation if it were not awarded the lease. Yeshiva asserted that it was "ready, willing and able to pay an amount in excess of $60,000 in order to obtain a lease for Bluefield" and that it was ready "to match or exceed any bona fide offer for Bluefield made by the Gittelman School". Yeshiva also stated that it planned to educate approximately 600 students at the Bluefield Elementary School and was prepared to enter into a contract with the East Ramapo Central School District for a maintenance and custodial service selected by it.

A public meeting was held on June 4, 1986, and speakers on behalf of both parties were heard. The board, after discussing the matter, noted that Gittelman had maintained the school building it had been leasing from the board in an excellent manner and that the board had a moral and quasi-legal obligation to lease the Bluefield Elementary School to Gittelman as it was being displaced by the board from the other school. Although some comments favorable to the Yeshiva were made, the board voted 8 to 1 to award a five-year lease for the Bluefield Elementary School to Gittelman.

Yeshiva instituted the instant proceeding pursuant to CPLR article 78, claiming that the action taken by the board was arbitrary and capricious. The Supreme Court agreed with Yeshiva holding that, under the applicable case law, the board had an obligation to obtain the best financial return for the Bluefield Elementary School lease and its failure to do so constituted a failure to perform a duty enjoined upon the board by law. The court then ordered the lease annulled and, since Yeshiva had never made a specific monetary offer for

the lease other than stating it would match or exceed any bona fide offer made by Gittelman, remitted the matter to the board for a determination of the greatest financial benefit it could obtain for a lease of the Bluefield Elementary School.

■ Initially, we find Gittelman's claim on appeal that Yeshiva does not have standing to bring this proceeding to be without merit. It is clear that Yeshiva, having been an applicant and having been a party in the board's proceedings for the purpose of obtaining the lease, was a party aggrieved by the board's determination which granted the lease to a third party. Yeshiva does have standing to sue to ensure that the awarding of leases by the board under Education Law § 403-a is performed in accordance with the provisions of the Education Law (see, e.g., Matter of Bianchi v City of Troy, 92 AD2d 960). The relief requested in the instant petition is predicated, inter alia, upon the ground that the board, in awarding the lease to Gittelman, acted in an illegal, arbitrary and capricious manner by failing to take the fair market rental value of the premises and offers in excess thereof into consideration in violation of Education Law § 403-a. These allegations are sufficient to state a claim upon which relief may be granted (see, Merritt Meridian Constr. Corp. v Gallagher, 96 AD2d 933).

■ Turning to the main issue, we find that the board's awarding of the lease to Gittelman was improper. The standard for review by a court of administrative action taken by an agency, and the exercise of that agency's discretion, is whether or not the action is arbitrary and capricious. If a court finds the agency has abused its discretion or acted in an arbitrary or capricious manner, it may then set aside the determination of the agency (see, Matter of Pell v Board of Educ., 34 NY2d 222, 230-232). In this case, the board based its action upon Education Law § 403-a which authorizes the leasing of surplus school property. In pertinent part, that statute provides that a Board of Education may lease property to any person, partnership or corporation that the board has determined "will provide the most benefit to the school district" (Education Law § 403-a [3]) for a sum not "less than the fair market rental value" of the property (Education Law § 403-a [1] [a]).

Our determination of the meaning of the "most benefit" language in Education Law § 403-a is assisted by the decision of the Court of Appeals in Matter of Ross v Wilson (308 NY 605). In Ross, the court considered the sale of a surplus school

building under a separate provision of the Education Law. In finding that the Board of Education in *Ross* erred in selling a school building to a bidder which did not offer the highest bid, the Court of Appeals made clear that a Board of Education is in a similar position to that of a trustee or fiduciary and that " '[i]t is mandatory upon trustees, with discretionary power of sale, to dispose of trust property upon the most beneficial terms which it is possible for them to secure' " *(Matter of Ross v Wilson, supra,* at 612).

Although the transaction at issue in the instant appeal is a lease rather than a sale, it is our opinion that the underlying rationale in *Ross (supra)* applies. However, that rationale must be qualified in the instant case given the differing natures of a sale as opposed to a lease transaction. Those differences require that the monetary return, although a proper factor, need not be considered as the sole factor in determining "the most benefit" to the school district in a lease transaction. The nature of the use of the property, the wear and tear the property may receive and the standard of maintenance of the property by a potential tenant are among the factors which may also be properly considered by a Board of Education in evaluating which applicant should be awarded a lease. Since the Board of Education retains ownership of the property being leased, it would be in breach of its fiduciary duty if it did not also consider the potential condition and value of the property when returned to it upon the termination of the lease. Further, as we have previously noted in considering sales transactions under the Education Law, a higher bid does not always result in a school district receiving the most monetary benefit *(see, Matter of New City Jewish Center v Flagg,* 111 AD2d 814, *affd* 66 NY2d 980 [slightly higher bid of tax exempt organization was offset by private developer's returning property to tax roll]).

In the instant case, however, the board completely ignored the amount of money to be offered for the lease by the parties as a factor in determining "the most benefit" to be achieved by the board. The board, absent information as to those amounts, could not make an informed decision as to which offer would bring the greatest financial benefit to the school district based upon a lease at the most beneficial terms *(see, Matter of New City Jewish Center v Flagg, supra,* at 815). The board improperly determined that the fair market value of the lease would act as a ceiling price rather than as the lowest price acceptable. Certainly, the amount of money the board

would receive for the lease should be considered among the factors in determining "the most benefit". The board's action in awarding the lease to Gittelman was, therefore, arbitrary and capricious and must be set aside. As the board did not accept actual bids on the lease, this matter must be remitted to it for consideration of the monetary offers of the two parties, as well as consideration of all other pertinent factors in the determination of which party's offer would most benefit the school district.

We have considered the remaining arguments raised by the parties and find them to be without merit.

MOLLEN, P. J., BROWN and RUBIN, JJ., concur.

Ordered that the judgment is affirmed, without costs or disbursements.