In the Matter of JERKENS TRUCK & EQUIPMENT, INC., Appellant, v CITY OF YONKERS et al., Respondents.

Second Department, January 13, 1992

**APPEARANCES OF COUNSEL**

*Samuels & Grossman (Allan C. Samuels, Michael F. Grossman* and *John F. Byrne* of counsel), for appellant.

*J. Radley Herold, Corporation Counsel (Anthony P. Vigna* of counsel), for City of Yonkers, respondent.

*Lawrence Vincent Kelly (Laura M. Carbo* of counsel), for Ottawa Truck Corporation, respondent.

**OPINION OF THE COURT**

O'BRIEN, J.

■ The petitioner unsuccessfully bid on a municipal contract and commenced the instant proceeding to set aside the contract awarded to its competitor. During discovery proceedings, the court, on March 18, 1988, entered an order of preclusion against the petitioner, which effectively prevented it from establishing that the contract should have been awarded to it. The narrow question presented on appeal is whether the petitioner has standing to continue this proceeding to challenge the fairness of the municipality's bidding process in the absence of entitlement to direct relief. We

conclude that the court erred in dismissing the petition on the ground that the petitioner lacked standing, and remit the matter to the Supreme Court, Westchester County, for further proceedings.

## I

In November 1985 the respondent City of Yonkers invited bids on a contract to provide 12 refuse collection vehicles for the City. The petitioner, which previously had supplied such vehicles to the City, submitted a bid in January 1986 in the amount of approximately $100,000 per vehicle. The vehicles supplied by the petitioner were to be manufactured by Crane Carrier Company (hereinafter Crane), an Oklahoma company for which the petitioner was the exclusive distributor in New York. The respondent Ottawa Truck Corporation (hereinafter Ottawa) also submitted a bid in January 1980 which was about $4,000 less per vehicle than the petitioner's bid. The trucks offered by Ottawa were to be manufactured at its plant in Kansas. In March 1986 the City accepted Ottawa's bid.

The petitioner commenced this proceeding in April 1986 to prohibit the City from awarding the contract to Ottawa and to compel the City to award the contract to it. The petitioner claimed, *inter alia,* that Ottawa's bid, while lower than its own, differed materially from the specifications in the invitation to bid and that the City had engaged in improper postbid negotiations with Ottawa.

The court dismissed the proceeding in June 1986 finding that the City had not acted arbitrarily in accepting Ottawa's bid and holding that a municipality may engage in postbid discussions with a successful bidder and may amend the specifications in the public interest. The petitioner appealed and, in May 1987 this court reinstated the petition and remitted the matter for a hearing primarily on the issues of whether Ottawa's bid complied with the bid specification that the cab and chassis "shall be of a proven design presently in production and service" and of whether the City improperly waived noncompliance with that specification *(see, Matter of Jerkens Truck & Equip. v City of Yonkers,* 130 AD2d 576).

During discovery proceedings held in connection with the anticipated hearing, the petitioner, Ottawa, and the City entered into a stipulation in August 1987 whereby documents marked "confidential" which were produced pursuant to discovery requests, would be disclosed only to "designated" per-

sons and would be kept confidential. However, Crane, which is not a party to the instant proceeding, refused to sign the confidentiality agreement. On or about March 18, 1988, following nearly a year of continuing discovery disputes, the court, on Ottawa's motion, issued an order of preclusion against the petitioner. The court noted that, while the petitioner intended to rely on Crane's expertise in pursuing its case, the petitioner maintained that it was unable to obtain Crane's agreement to the order of confidentiality. "In other words, the petitioner maintains that Crane may learn Ottawa's trade secrets with impunity but Ottawa may not discover the essentials of Crane's truck even for the sole and limited purpose of this litigation". The court directed the petitioner to produce documents previously demanded by Ottawa and to produce Crane's agreement to the order of confidentiality within 10 days. In the event the petitioner failed to produce Crane's agreement, the court ruled that Ottawa would not have to produce its confidential documents for discovery and inspection, and the petitioner would be precluded at the hearing from offering any evidence with respect to the design, manufacture and specifications of the Crane vehicles.

The petitioner filed a notice of appeal from the order of preclusion but subsequently abandoned the appeal. The propriety of that order therefore is not before us. The petitioner did not produce Crane's agreement and, in April 1989 noticed the matter for trial, attesting that all necessary discovery proceedings had been completed. Ottawa and the City then moved for summary judgment dismissing the petition, claiming that, since the petitioner was precluded from offering any proof as to the specifications of the Crane trucks, it could not prevail on the claim that the contract should have been awarded to it. The court granted the motion and dismissed the proceeding. It concluded that the petitioner could not establish its entitlement to an award of the contract or to an award of damages and that, absent entitlement to such relief, it could not continue the instant proceeding. The court held that the petitioner's remedy was a taxpayer action pursuant to General Municipal Law § 51 to assert a public interest claim with respect to the bidding process, relying on *Matter of City Tank Corp. v Director of Purch. of Town of Hempstead* (233 NYS2d 610, *affd* 18 AD2d 821 [without opn]). In that case, one of the bidders on a municipal contract to furnish refuse collection vehicles commenced a proceeding pursuant to CPLR article 78 to bar an award of the contract to its competitors. The

petitioner did not clearly seek an award of the contract to itself. Under those circumstances, the court held that the petitioner did not have standing to maintain a proceeding pursuant to CPLR article 78 and that the public wrong must be redressed in an action under General Municipal Law § 51. For the reasons that follow, we conclude that the court erred in finding the decision in *Matter of City Tank Corp. v Director of Purch. of Town of Hempstead (supra)*, controlling on the issue of standing.

## II

The petitioner unquestionably had standing to commence the instant proceeding to review the legality of the bidding process, since the petition contained allegations of direct injury. The petitioner alleged that, but for the City's improper actions, it would have been awarded the contract as the lowest bidder *(see, e.g., Matter of Cataract Disposal v Town Bd.,* 53 NY2d 266; *Matter of Dictaphone Corp. v O'Leary,* 287 NY 491; *see also, Matter of Wilson Omnibus Corp. v Fallsburg Cent. School Dist.,* 167 AD2d 803; *Matter of Feldman v Miller,* 151 AD2d 755; *Matter of Willets Point Contr. Corp. v Town Bd.,* 141 AD2d 735). The respondents argue, however, that the petitioner can no longer be considered an aggrieved party because it cannot establish injury, that is, that it was entitled to an award of the contract. We agree with the respondents that, even if the petitioner were to prevail on its claim that the bidding process was unfair, the order of preclusion effectively prevents the petitioner from establishing that the contract should have been awarded to it. The order precluded the petitioner from offering any evidence as to the specifications of the Crane vehicles. Nevertheless, the absence of such direct relief is not dispositive of the issue of whether the petitioner has standing to continue its challenge to the legality of the bidding process.

The concept of standing has expanded considerably since *Matter of City Tank Corp. v Director of Purch. of Town of Hempstead (supra)* was decided in 1963. Under the traditional concept of standing, a litigant who challenged the validity of a governmental action was required to demonstrate personal injury suffered as a result of that act *(see, Matter of Donohue v Cornelius,* 17 NY2d 390). The traditional concept subsequently gave way to a more flexible, expansive approach to standing *(see, Boryszewski v Brydges,* 37 NY2d 361). For example, in

*Matter of Burke v Sugarman* (35 NY2d 39), the Court of Appeals determined that eligible persons on a civil service list, who claimed that unlawful appointments were being made from the list, had standing to prosecute a proceeding pursuant to CPLR article 78 even though they had no personal remedy and might only succeed in the removal of others who held their positions unlawfully. The court found that the petitioners were directly affected by the failure to comply with the law, and "[a]s parties to a proceeding they bring the kind of interest that leads to full and vigorous presentation and exploration of the issues involved" *(Matter of Burke v Sugarman, supra,* at 44). In *Matter of Dairylea Coop. v Walkley* (38 NY2d 6, 9), the Court of Appeals noted that the traditional approach to standing had been disavowed "because it focuses on the issues to be litigated rather than on the party bringing suit * * *. The 'zone of interest' test [of standing] was formulated to ascertain the petitioner's status without necessarily dealing with the merits of the litigation". Under the *Dairylea* test, there are three criteria for standing: "(1) the interest asserted must be arguably within the zone of interest to be protected by the statutory or constitutional provisions sought to be enforced; (2) the administrative decision for which review is sought must be shown to have a harmful effect upon the party asserting standing; and (3) there must be no clear legislative intent negating review" *(Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436, 442-443; *Matter of Axelrod v Sobol,* 78 NY2d 112, 115).

Applying the *Dairylea* test to the case at bar, we conclude that the court erred in dismissing the petition on the ground that the petitioner lacked standing. The first prong of the test is satisfied since the petitioner's interest arguably falls within the zone of interest to be protected by the applicable statute, General Municipal Law § 103. Under that statute, the City was required to award the contract for refuse collection vehicles to the lowest responsible bidder. One of the purposes of General Municipal Law § 103 is to preclude favoritism by public officials in the award of contracts *(see, Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187; *Gerzof v Sweeney,* 16 NY2d 206). While competitive bidding statutes were not enacted for the benefit or enrichment of bidders, "[l]ogic and experience teach that competition for public contracts may be promoted only by fostering a sense of confidence in potential bidders that their bids will be fairly considered and that they will not be deprived of any substantial benefit

afforded to their competitors" *(Matter of Fischbach & Moore v New York City Tr. Auth.,* 79 AD2d 14, 20). If a municipality waives material variances in bids received, other bidders who might have reduced their bids will be deprived of the opportunity to do so. "This, combined with the danger of favoritism, fraud or corruption inherent in a selection process conducted under such circumstances, might well discourage contractors from bidding on future contracts, thus diminishing competition to the detriment of the public" *(Matter of Fischbach & Moore v New York City Tr. Auth., supra,* at 20).

Regardless of whether the petitioner may ultimately be awarded the contract, it has an interest in the fairness of the process and, as a bidder, is in a position to raise issues of public interest which otherwise might not be brought to light. To preclude review unless the unsuccessful bidder can show that it would have been awarded the contract but for the alleged improprieties would tend to insulate the process from judicial review *(see, e.g., Matter of Har Enters. v Town of Brookhaven,* 74 NY2d 524 [to deny standing absent an allegation that the owner of the property will suffer some adverse environmental consequence would insulate decisions concerning SEQRA compliance from judicial review, a result contrary to the public interest]).

The second prong of the test—a showing of harmful effect— is satisfied by the petitioner's allegations that improper post-bid negotiations between the City and Ottawa altered the terms of the bid and therefore denied it the opportunity to be the lowest responsible bidder *(see, e.g., Matter of New York State Assn. of Community Action Agency Bd. Members v Shaffer,* 119 AD2d 871 [respondents' determination severely impaired the opportunity of petitioners' member agencies, who were otherwise eligible for funding under the program]; *Matter of Barnes v Binghamton Urban Renewal Agency,* 127 Misc 2d 859 [one claiming that improper procedure denied him the opportunity to be the lowest responsible bidder has standing]). Finally, with respect to the third prong of the *Dairylea* test, there is no evidence of a clear legislative intent against review of a municipality's competitive bidding process by a dissatisfied bidder.

Our determination that the petitioner has standing to continue this proceeding is in accord with those cases that have recognized that an unsuccessful bidder may litigate the issue of the legality of the bidding procedures on a public contract, since it is a matter of public interest, without regard to

whether that bidder may ultimately be awarded the contract. In *Matter of Yeshiva of Spring Val. v Board of Educ.* (132 AD2d 27), this court held that the Yeshiva, having been an applicant for the lease in question and a party to the proceedings before the Board of Education, did have standing to bring a proceeding pursuant to CPLR article 78 to ensure that the awarding of leases by the Board of Education was performed in accordance with provisions of the Education Law. In arriving at that decision, this court relied upon a decision of the Appellate Division, Third Department, in *Matter of Louis G. Bianchi, Inc. v City of Troy* (92 AD2d 960), in which a street-paving contract at issue between two bidders had already been completed at the time of the court's decision. The court found that the unsuccessful bidder had standing to sue "to ensure that the preparation of bid proposals and the awarding of public works contracts, matters of acknowledged public interest, are performed in accordance with the General Municipal Law. The circumstance that a direct remedy is unavailable * * * is no impediment" *(supra,* at 960). In an earlier case, this court held that an unsuccessful bidder had standing to maintain a proceeding to review the award of a contract in violation of General Municipal Law § 103, but he was not entitled to recover from the municipality for the profits he might have had if his bid had been accepted. "[T]his procedure is sanctioned merely to ensure enforcement of the statute" *(Matter of Allen v Eberling,* 24 AD2d 594). The Appellate Division, Fourth Department, held in *Elia Bldg. Co. v New York State Urban Dev. Corp.* (54 AD2d 337), that the preparation of bids and awarding of contracts for a public project was a matter of public interest which relieved the petitioner of the obligation to show that it was an aggrieved party or had a special interest.

In sum, we conclude that the court erred in ruling that the petitioner did not have standing to continue to pursue this proceeding to set aside the contract to Ottawa based on its claims of improprieties in the bidding process. By our decision here, we do not suggest that a taxpayer action under General Municipal Law § 51 is not an equally viable method for an unsuccessful bidder to challenge the legality of the bidding process *(see, Gerzof v Sweeney, supra).* The court simply erred in concluding that such an action was the petitioner's only remedy, once it could no longer establish its entitlement to an award of the contract. We note that there is no allegation in the petition, nor is there proof in the record, that the peti-

tioner pays real property taxes in the city, which is a condition precedent for an action pursuant to General Municipal Law § 51 *(see, Weimer v Board of Educ.,* 52 NY2d 148; *New York Pub. Interest Research Group v Board of Assessment Review,* 104 Misc 2d 128).

## III

■ In light of our decision that the petitioner has standing, the issue remains as to whether the evidence presented by the petitioner established that there are triable issues of fact which preclude granting the respondents' motion for summary judgment. The Supreme Court did not reach this issue. Although the court suggested in its decision that continuation of this proceeding would not be in the public interest, that statement was dicta, and we decline to address it. Although this court has the power to search the record to determine whether triable issues of fact exist *(see, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106; *Grimaldi v Pagan,* 135 AD2d 496), it appears that depositions were provided to the Supreme Court in connection with the motions for summary judgment which were not made part of the record on appeal. We therefore remit the matter to the Supreme Court, Westchester County, for further proceedings consistent herewith.

BALLETTA, J. P., MILLER and RITTER, JJ., concur.

Ordered that the judgment is reversed, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, the order entered October 20, 1989, is vacated, and the matter is remitted to the Supreme Court, Westchester County, for a new determination on the motion for summary judgment.