METROPOLITAN EXPRESS SERVICES, INC., a Kansas Corporation, Plaintiff/Appellant,

Sylvia B. Krieger, doing business as Overland Limousine; Furney Charters, doing business as Travelers Express, Inc., a Kansas Corporation; G & B Enterprises, doing business as KCI Roadrunner, Inc., a Kansas Corporation; A–1 City Cab Shuttle Corporation, Plaintiffs,

v.

CITY OF KANSAS CITY, MISSOURI, a Municipal Corporation of Missouri, Defendant/Appellee.

No. 93–2479.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided May 5, 1994.

Rehearing Denied June 3, 1994.

Thomas Brown, Kansas City, MO, argued, for appellant.

Daniel Jackson, Kansas City, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Metropolitan Express Services ("Metropolitan") appeals from the district court's order dismissing its claims against Kansas City, Missouri, (the "City") for lack of standing. We reverse and remand.

## I.

The City contracted with the Kansas City Area Transportation Authority (the "Authority") to provide scheduled ground transportation between Kansas City International Airport (the "Airport") and destinations in the metropolitan area. The Authority's contract permitted it to meet passengers only at one gate inside Terminal C, one of three terminal buildings. Thus, passengers who arrived at the other two terminals had to retrieve their luggage, board a shuttle bus, and travel to Terminal C before boarding the ground

transportation provided by the Authority. Many potential customers had difficulty finding the Authority service, and others simply chose another form of transportation that did not require them to change terminals. To increase its number of passengers, the Authority requested permission from the City to use mobile ticket counters in all three terminals. A mobile ticket counter is an electric cart, similar to a golf cart, that can travel from gate to gate to meet passengers as they deplane. The City denied the Authority's request, and in July 1991, the Authority cancelled its contract with the City. Without greater presence in the terminals or a subsidy, the Authority did not believe that it could make a profit.

Before the Authority cancelled its contract with the City, Metropolitan, pursuant to a subcontract with the Authority, had provided scheduled ground transportation between the Airport and Johnson County, Kansas. Independent of its subcontract with the Authority, Metropolitan provided unscheduled ground transportation between the Airport and hotels throughout the metropolitan area. After the Authority cancelled its contract with the City, Metropolitan received notice that the City would open bids on August 29, 1991, for a concession agreement to provide scheduled ground transportation. According to the notice, an interested potential bidder could request a "Solicitation for Bids" package, which included (1) a notice to bid, (2) instructions to bidders, (3) a bid form, and (4) a sample concession agreement. The bid form permitted the successful bidder to have an office and three stationary ticket sale counters in each of the three terminal buildings. After examining the bid package, Metropolitan did not submit a bid because it believed that a concession agreement which did not provide for mobile ticket counters was not economically viable.

The City awarded the concession agreement to Executive Coaches, which later changed its name to KCI Shuttle. KCI Shuttle's bid provided for stationary ticket counters in only one terminal and did not mention mobile ticket counters. After awarding the concession agreement to KCI Shuttle, the City began negotiating with KCI

Shuttle with respect to the City's desire that the concessionaire maintain ticket counters in all three terminals. In November 1991, the City approved an ordinance authorizing an exclusive concession agreement with KCI Shuttle. The agreement permitted KCI Shuttle to operate mobile ticket counters in each terminal.

Metropolitan then filed this action, alleging that the concession agreement between the City and KCI Shuttle was void because the City had violated the Missouri Constitution by granting an exclusive contract and had improperly bid the concession agreement by negotiating material changes with the successful bidder. After a bench trial, the district court found that Metropolitan did not have standing to raise either of its claims and dismissed the action. This appeal followed.

## II.

■ In a diversity case, a court will not address the plaintiff's claims unless the plaintiff has standing to sue under state law. *See Westborough Mall, Inc. v. City of Cape Girardeau,* 693 F.2d 733, 747 (8th Cir.1982) (looking to state law to decide whether plaintiff had standing to raise state claim in federal court), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983); *City of Moore v. Atchison, Topeka & Santa Fe Ry.,* 699 F.2d 507, 511 (10th Cir.1983) (stating that state law determines who has standing to challenge the constitutionality of a state statute on the ground that it violates state constitution); *Owen of Ga., Inc. v. Shelby County,* 648 F.2d 1084, 1088–90 (6th Cir.1981) (applying state law to determine whether unsuccessful bidder has standing to challenge award of contract to other bidder); 13A Charles A. Wright et al., *Federal Practice and Procedure* § 3531.14 (2d ed. 1984) ("Federal courts have stated that state law of standing should be applied as to state rights ... in an original diversity action."). We recognize, however, that standing is also one aspect of the Article III case or controversy requirement. Thus, if a plaintiff does not meet the Article III standing requirements, a federal court does not have power to hear his claim. *See, e.g., Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434 (7th Cir.1994) (dismiss-

ing state law claim because plaintiff did not have standing under Article III). Although the parties and the district court did not address the requirements of Article III, we are satisfied that Metropolitan has standing under Article III to raise its claims. Accordingly, we will limit our discussion to Metropolitan's standing to raise its claims under Missouri law.

## A. Constitutionality of the Concession Agreement

We first consider whether Metropolitan has standing to challenge the constitutionality of the ordinance authorizing an exclusive concession agreement. The Missouri Constitution provides that "[t]he general assembly shall not pass any local or special law granting to any corporation ... any special or exclusive right, privilege or immunity." Mo. Const. art. III, § 40(28). Although the constitutional prohibition is worded in terms of laws granting exclusive rights, the Missouri Supreme Court has made it clear that municipal ordinances granting exclusive rights are also subject to a constitutional challenge. *See, e.g., Carroll v. Campbell,* 108 Mo. 550, 17 S.W. 884 (1891), *aff'd,* 110 Mo. 557, 19 S.W. 809 (1892).

In Missouri, a party has standing to challenge the constitutionality of an ordinance if "he is directly and adversely affected by the ordinance." *Miller v. City of Manchester,* 834 S.W.2d 904, 906 (Mo.Ct.App. 1992) (citing *City of Bridgeton v. Ford Motor Credit Co.,* 788 S.W.2d 285, 290 (Mo.1990) (en banc)). The district court held that Metropolitan did not have standing to challenge the constitutionality of the ordinance approving the concession agreement because Metropolitan was not injured by the exclusivity of the agreement, any injury to Metropolitan resulting instead from its refusal to subcontract with KCI Shuttle. We agree with Metropolitan that the district court erred in so ruling.

Metropolitan's president testified that the City's transportation consultant had asked if it might be possible for Metropolitan and the successful bidder "to work it out." An inquiry from the City's transportation consultant, however, is not evidence that KCI Shuttle offered a subcontract to Metropolitan. Al-

though KCI Shuttle offered subcontracts to other transportation providers who were also plaintiffs in the district court, there is no evidence in the record that KCI Shuttle offered a subcontract to Metropolitan.

Pursuant to the concession agreement, the City granted KCI Shuttle exclusive access to the terminal buildings. The City prohibited Metropolitan from entering the terminals to meet its passengers, with the result that Metropolitan had to meet its passengers at the curb. Metropolitan claims that its passengers stopped using its services because they were not permitted to gather inside the terminals. As a result, Metropolitan ceased doing business at the Airport. Accordingly, we find that Metropolitan's allegation that it was injured by the exclusive concession agreement sufficient to confer standing under Missouri law to challenge the constitutionality of the ordinance authorizing the agreement. *See State ex rel. City of St. Louis v. Litz,* 653 S.W.2d 703, 706 (Mo.Ct. App.1983) (stating that any party that alleges it is adversely affected by an ordinance may challenge the constitutionality of the ordinance).

## B. The Bidding Procedure

We turn then to Metropolitan's argument that it has standing to challenge the concession agreement because of the City's post-bid negotiations with the successful bidder. The district court, relying on Missouri cases denying standing to unsuccessful bidders, found that Metropolitan did not have standing to raise its illegal bid procedure claim.

Although the district court correctly noted that Missouri courts have denied standing to unsuccessful bidders, the cases upon which the district court and the City rely are distinguishable. In *Metcalf & Eddy Services, Inc. v. City of St. Charles,* for example, the court held that the plaintiff, an unsuccessful bidder, did not have standing to sue on its claim that it should have been awarded the contract because it submitted the lowest bid. 701 S.W.2d 497, 499 (Mo.Ct.App.1985); *see also State ex rel. Johnson v. Sevier,* 339 Mo. 483, 98 S.W.2d 677, 679 (1936) (en banc);

*Pace Constr. Co. v. Missouri Highway & Transp. Comm'n,* 759 S.W.2d 272, 274–75 (Mo.Ct.App.1988); *La Mar Constr. Co. v. Holt County R–II Sch. Dist.,* 542 S.W.2d 568, 570 (Mo.Ct.App.1976). Metropolitan is not claiming that it should have been awarded the concession agreement. Metropolitan did not even submit a bid. Rather, Metropolitan alleges that because the City disregarded competitive bidding procedures, it did not have an opportunity to bid on the concession agreement that was awarded to KCI Shuttle.

■ Although Missouri courts have not decided whether an unsuccessful bidder has standing to raise such a claim, other courts have held that an unsuccessful bidder has standing to challenge a contract that was not awarded in accordance with competitive bidding requirements. *See, e.g., Conway Corp. v. Construction Engineers, Inc.,* 300 Ark. 225, 782 S.W.2d 36, 41 (1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Wahl v. City of Wilmington,* No. C.A. 13035, 1994 WL 13638, at *2 (Del.Ch. Jan. 10, 1994); *Young v. Village of Glen Ellyn,* 120 Ill.App.3d 692, 76 Ill.Dec. 483, 485, 458 N.E.2d 1137, 1139 (1983); *Jerkins Truck & Equip., Inc. v. City of Yonkers,* 174 A.D.2d 127, 579 N.Y.S.2d 417, 420 (1992); *Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.,* 67 Ohio App.3d 812, 588 N.E.2d 920, 924 (1990); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't of Nashville & Davidson County,* 842 S.W.2d 611, 618 (Tenn.Ct.App.1992). Even in jurisdictions such as Missouri that generally do not permit an unsuccessful bidder to challenge the award of the contract to a higher bidder, an unsuccessful bidder has standing to challenge a contract if the bidding procedure did not permit all bidders to compete on equal terms. *See, e.g., Spiniello Constr. Co. v. Town of Manchester,* 189 Conn. 539, 456 A.2d 1199, 1202 (1983).

■ In Missouri, a plaintiff has standing to sue if he alleges "some threatened or actual injury resulting from the putatively illegal action." *Harrison v. Monroe County,* 716 S.W.2d 263, 266 (Mo.1986) (en banc)

(quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)). Additionally, that interest which the plaintiff seeks to protect must be "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)).

■ Applying the Missouri standing requirements, we conclude that an unsuccessful bidder has standing to challenge a contract that was not fairly bid. In *State ex rel. Stricker v. Hanson,* the court recognized that "competitive bidding procedures for public contracts should ensure 'that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants.'" 858 S.W.2d 771, 778 (Mo.Ct.App. 1993) (quoting *City of Maryville ex rel. Citizens' Nat'l Bank v. Lippman,* 151 Mo.App. 447, 132 S.W. 47, 48 (1910)). Thus, an unsuccessful bidder that was denied a fair opportunity to bid on a public contract is within the zone of interests to be protected by competitive bidding requirements. Metropolitan contends that it did not have a fair opportunity to compete because the City provided KCI Shuttle, the successful bidder, with information that other bidders did not receive and, as a result of negotiations with KCI Shuttle based on that information, offered KCI Shuttle a contract that was materially different from the contract proposed in the bid package. *See* 64 Am.Jur.2d *Public Works and Contracts* § 66 (1972) ("[P]ublic authorities cannot enter into a contract with the lowest bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids were invited."); 63 C.J.S. *Municipal Corporations* § 997 (1950) ("In order that there may be fair competition, the same information should be given to all; and a contract awarded on private information given only to the successful bidder is unfair, illegal, and void."). If Metropolitan's claim has merit,[1] then the unsuccessful bidders suf-

---

1. Many of the City's arguments challenge the merits of Metropolitan's claims. We do not ad-

dress those arguments because the only issue before us is Metropolitan's standing to raise its

**1372**

fered injury as a result of being deprived of an opportunity to bid on the contract that KCI Shuttle was awarded, giving them standing to challenge the contract.

Metropolitan, however, is not an unsuccessful bidder, for it did not submit a bid. Nevertheless, we believe that Metropolitan has standing to raise its competitive bid procedure claim. Metropolitan received a bid package, and the City expected Metropolitan to submit a bid. Metropolitan decided not to submit a bid, however, because the bid package did not provide for mobile ticket counters. Metropolitan believed that the concession agreement was not economically viable without mobile ticket counters. The bid package prohibited conditional bids and alterations, and the City did not inform Metropolitan that it would be willing to accept bids providing for mobile ticket counters or to negotiate with the successful bidder regarding mobile ticket counters. Accordingly, we conclude that Metropolitan has standing to challenge the bid procedure because the City's actions that Metropolitan challenges also explain Metropolitan's failure to submit a bid. *See Unysis Corp. v. Department of Labor,* 220 Conn. 689, 600 A.2d 1019, 1022–23 (1991) (holding that a qualified potential bidder who would have submitted a bid absent an unfair bid procedure has standing to challenge the procedure); *Pucillo & Sons, Inc. v. Township of Belleville,* 249 N.J.Super. 536, 592 A.2d 1218, 1222–23 (App.Div.) (same), *cert. denied,* 127 N.J. 551, 606 A.2d 364 (1991).

Having decided that Metropolitan has standing to challenge the award of the concession agreement as a potential bidder, we need not consider Metropolitan's claim that it also has standing to challenge the agreement as a Kansas City, Missouri, taxpayer.

The judgment dismissing Metropolitan's claims for lack of standing is reversed, and the case is remanded to the district court for further proceedings.

claims. "[I]n the context of standing, it is the nonfrivolous claims of a party that are determinative, not whether the party can sustain those

claims by proof on the merits." *City of St. Louis v. Department of Transp.,* 936 F.2d 1528, 1532 (8th Cir.1991).