United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-2971/3125

| | |
|---|---|
| John V. Wolfe, Trustee, | * |
| | * |
| Appellant/Cross-Appellee, | * |
| | * |
| and | * |
| | * |
| Liberty Mutual Insurance, | *  Appeals from the United States |
| | *  District Court for the District |
| Plaintiff, | *  of Nebraska. |
| | * |
| v. | * |
| | * |
| Gilmour Manufacturing Company, | * |
| | * |
| Appellee/Cross-Appellant. | * |

_____

Submitted: March 11, 1998

Filed: May 8, 1998

_____

Before MORRIS SHEPPARD ARNOLD and FLOYD R. GIBSON,[1] Circuit Judges, and NANGLE,[2] District Judge.

_____

---

[1]In conference, Judge Floyd R. Gibson expressed his desire to reverse the judgment of the district court in this case, but his temporary disability due to illness has prevented his further participation.

[2]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Vicky Heller was an employee of National Farm Products, Inc., at its hog farrowing unit in Atkinson, Nebraska. In the course of her work, she used a sprayer that Gilmour manufactured to apply a disinfectant called Pantek II to farrowing crates. The bottle containing the Pantek II separated from the sprayer, permitting the chemical to come in contact with Ms. Heller and to cause related injuries. Ms. Heller filed an action in negligence and strict product liability against Gilmour Manufacturing, Inc. In the course of the litigation, Ms. Heller was replaced as the plaintiff by her trustee in bankruptcy, John Wolfe. The case was tried to a jury, resulting in a plaintiff's verdict on the negligence claim in the amount of only $1. Mr. Wolfe appealed on several grounds, and Gilmour cross-appealed. We affirm the judgment of the trial court[3] in all respects.

I.

Mr. Wolfe first complains that the trial court erred by giving an instruction to the jury regarding Ms. Heller's negligence and by failing to give a cautionary instruction regarding compensation to Ms. Heller from collateral sources such as insurance. As a preliminary matter, we note that we examine the correctness of jury instructions as a whole and not atomistically, and we will not reverse a judgment based on an alleged error in instructing a jury unless that error was prejudicial. *See United States v. Whatley*, 133 F.3d 601, 604-05 (8th Cir. 1998).

The trial court instructed the jury that Gilmour maintained that Ms. Heller was negligent by failing to read certain directions regarding the use of Pantek II. Mr. Wolfe

[3]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

asserts that giving this instruction was erroneous because there was no evidence that failing to read the directions contributed to Ms. Heller's injuries. We disagree.

The directions inform the user of Pantek II to wear an impervious protective apron, and one of the contested issues at trial was what protective clothing, if any, Ms. Heller was wearing at the time of the accident. Ms. Heller testified that the Pantek II came in contact with her skin because the top two or three buttons of her raincoat were unbuttoned; there was also testimony that Ms. Heller told the doctor who treated her at the hospital following the accident that she was not wearing a raincoat at all. There was therefore evidence that Ms. Heller failed to wear an impervious protective apron, contrary to the cautionary directions provided, and that this failure led to her injuries or some part of them. We hold that the trial court did not err by instructing the jury to consider Ms. Heller's failure to read the directions in determining her negligence, because the jury could reasonably have concluded that, if she had read them, her injuries would not have occurred.

With respect to the trial court's failure to give an instruction regarding collateral sources of compensation to Ms. Heller, we note that, under Nebraska law, benefits that a plaintiff receives from a source wholly independent of and collateral to the wrongdoer do not diminish the damages otherwise recoverable from that wrongdoer. *See Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 443 N.W.2d 872, 875 (Neb. 1989). The trial court may, of course, offer a jury instruction to this effect if it believes that such an instruction is necessary. In this case, however, we find little to suggest that the court should have given such an instruction.

Mr. Wolfe suggests that the trial court should have given the instruction because one or more jurors submitted questions to the court regarding collateral payments. The record shows that the trial court considered the proposed instruction, noted some concerns about it, and then decided not to give it. The trial court is, of course, in the best position to evaluate any difficulties that might arise in the course of the trial, and

to fashion jury instructions appropriate to them. *See Hall v. Arthur*, 1998 WL 154620, at *3 (8th Cir. April 6, 1998). Under the circumstances of this case, we do not believe that the trial court abused its discretion by deciding not to give the instruction on collateral sources of compensation.

## II.

Mr. Wolfe also asserts that the trial court erred by admitting two exhibits into evidence during the testimony of Sue Dorn, the farrowing manager who was supervising Ms. Heller on the day of the accident. Exhibit 136 was a report that included a statement that Ms. Dorn gave on the day after the accident regarding Ms. Heller's actions immediately following the accident, and exhibit 139 was a later statement that Ms. Dorn gave regarding Ms. Heller's actions immediately following the accident. Both exhibits were used to impeach Ms. Dorn by showing that her prior statements were inconsistent.

On direct examination, Mr. Wolfe used a portion of exhibit 139 to refresh Ms. Dorn's memory about the accident, and on cross-examination, Ms. Dorn was questioned extensively concerning both statements. On redirect examination, Ms. Dorn admitted that she gave four different statements, all of them inconsistent with each other. Following this testimony, Gilmour offered the contested exhibits into evidence, and Mr. Wolfe objected on the grounds that both statements were hearsay. The trial court admitted them, since they had already been described to the jury anyway, concluding that they would aid the jury in determining in what way and to what extent Ms. Dorn's prior statements were inconsistent with her testimony. We are unable to see how these statements could fail to be admissible under Fed. R. Evid. 402 on the question of whether Ms. Dorn made prior inconsistent statements as to material matters.

Even if the trial court erred by admitting these exhibits and then failing to instruct the jury that they were not evidence of the matters asserted in them, the error is

harmless because the contents were cumulative of other evidence already properly admitted. *See, e.g., Gee v. Groose*, 110 F.3d 1346, 1350 (8th Cir. 1997); *see also* 28 U.S.C. § 2111. Mr. Wolfe contends that the exhibits provided the only evidence of Ms. Heller's failure to mitigate damages immediately following the accident. Yet the record shows other evidence of Ms. Heller's failure to mitigate damages, including Ms. Heller's own medical records and Ms. Dorn's deposition testimony read at trial. We believe that the information provided by exhibits 136 and 139 was cumulative, and therefore that their admission without a limiting instruction was harmless error at worst.

## III.

Mr. Wolfe contends that a general verdict of $1 is inconsistent with the jury's specific interrogatories finding, first, that Gilmour was liable for the accident and, second, that Ms. Heller was either not negligent or only slightly negligent relative to Gilmour's negligence. Mr. Wolfe asserts that the evidence of Ms. Heller's damages was uncontroverted, and that it included medical bills and lost wages totaling about $28,000. But Mr. Wolfe did not raise this issue in a timely fashion before the trial court. It is well settled in this circuit that if a party fails to object to any asserted inconsistencies in interrogatories, and does not move for resubmission of the case before the jury is discharged, that party's right to seek a new trial is waived. *See Lockard v. Missouri Pacific Railroad Co.*, 894 F.2d 299, 304 (8th Cir. 1990), *cert. denied*, 498 U.S. 847 (1990).

Even if we were to entertain this issue on appeal, we would be bound to reconcile the interrogatories if it is possible to do so. *See Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1347 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 944 (1997). In this case, the jury could have concluded from the evidence that Ms. Heller failed to mitigate her damages after an accident to which her negligence did not contribute, and that a nominal damage award was therefore in order. There is thus no necessary inconsistency in the jury's answers to the relevant interrogatories.

## IV.

On cross-appeal, Gilmour argues that Ms. Heller originally lacked standing even to bring the suit. Standing is, of course, a threshold issue in every case before a federal court. If a plaintiff lacks standing, he or she cannot invoke the jurisdiction of the court. *See Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995), *cert. denied*, 516 U.S. 1173 (1996). In a diversity case, a court will not address a plaintiff's claims unless the plaintiff meets the "case or controversy" requirements of article III of the Constitution and also has standing to sue under the relevant state law. *See Metropolitan Express Services, Inc. v. City of Kansas City,* 23 F.3d 1367, 1369-70 (8th Cir. 1994). According to Nebraska law, causes of action, including those for negligence, constitute property rights that are vested in the trustee of a bankruptcy estate upon commencement of a bankruptcy proceeding. As a result, once a bankruptcy petition is filed, the debtor loses standing to pursue any cause of action that accrued prior to the filing of that petition. *See Forrest v. Eilenstine*, 554 N.W.2d 802, 807 (Neb. Ct. App. 1996).

Ms. Heller petitioned for bankruptcy between the time of the accident and the filing of this suit, and the bankruptcy trustee did not abandon the claim against Gilmour prior to the filing of the suit. Thus, when Ms. Heller sought to invoke the jurisdiction of the trial court, she did not have standing under either article III or Nebraska law to pursue her action. To remedy this problem, Ms. Heller first reopened her bankruptcy estate and then substituted the bankruptcy trustee as the plaintiff in this case.

In doing so, she relied on Fed. R. Civ. P. 17(a), which provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection" for a substitution of parties. Following Gilmour's objection, the trial court permitted Mr. Wolfe to be substituted for Ms. Heller as the real party in interest, and the rule provides that such a substitution "shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.* Thus once Mr. Wolfe replaced Ms. Heller, the

suit continued as if Mr. Wolfe had filed it originally. There is, of course, no dispute that Mr. Wolfe had standing to pursue this action under article III of the Constitution and under Nebraska law. Accordingly, we hold that Gilmour's cross-appeal is in this respect unfounded.

## V.

Gilmour asserts finally that because Mr. Wolfe failed to produce sufficient evidence that Gilmour was negligent, the trial court erred by failing to enter a judgment as a matter of law for Gilmour. A careful review of the record, however, indicates a significant amount of evidence tending to show that Gilmour knew or should have known about faults in its sprayer and acted negligently by failing to warn users of these faults or to correct them. In addition to Ms. Heller's testimony concerning the facts of the accident itself, three managers from National Farm Products testified that Gilmour sprayer bottles tend to disconnect from their lids, and two experts offered testimony regarding physical faults of the Gilmour sprayer. We believe that the jury could have reasonably found from this evidence that Gilmour was negligent in failing either to discover, to correct, or to warn of these risks. We therefore do not believe that the trial court erred in denying Gilmour's motion for judgment as a matter of law.

## VI.

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-