CITY OF MARYVILLE ex rel. CITIZENS' NATIONAL BANK of Des Moines, Iowa, Appellant, v. ADOLPH LIPPMAN and GEORGE INGERSON, Respondents.

. Kansas City Court of Appeals, November 21, 1910.

1. MUNICIPAL CORPORATIONS: Taxbills: Substantial Change in Specifications: Failure to Readvertise. After the first advertisement for bids, the specifications for the dimensions of the material were substantially changed by an amended ordinance. The city never readvertised in accordance with the changed specifications, but awarded the contract. *Held*, that the taxbills issued to pay for such work were invalid, because such a change was a fraud in law on the property owners and contractors, and was not a substantial compliance with the terms of section 5989, R. S. 1899 (section 9411, R. S. 1909).

2. ——: ——: Release of Contractor. The city council also subsequently released the contractor from putting in dowel pins to join the curbstones together, although the specifications in the contract as awarded provided that "all curbstones shall be joined with iron dowels." *Held*, that said release was in itself sufficient to render the taxbill invalid in respect to the curbing.

Appeal from Nodaway Circuit Court.—*Hon. J. W. Peery*, Special Judge.

AFFIRMED.

*Anthony Ford* for appellant.

(1)    The court erred in admitting as evidence, over the objection of plaintiff the fact that the Likes Improvement Company had not complied with the law governing foreign corporations for the reasons:  First. The defendants were neither parties nor privies to the contract between the city and the Likes Improvement Company and, therefore, had no right to question the validity of the contract.  Prendergast v. Richards, 2 Mo. App. 193; Hawsmon v. Waterworks Co., 119 Mo. 304.  Second.  The contract is fully executed and it validity cannot now be questioned.  Mfg. Co. v. Const. Co., 124 Mo. App. 349.  Third.  This is a suit on the taxbill and not a suit on the contract and the right of the company to enter into the contract cannot be assailed collaterally.  Fritts v. Palmer (132 U. S.), 10 Sp. Ct. Rep. 93; Hawsmon v. Waterworks Co., 119 Mo. 304; Herman v. Shult, 166 Mo. 409. Fourth.  The city having taken all the preliminary steps necessary to enable it to make the contract and the defendants having stood by and allowed their property to be benefited are now estopped from attacking the validity of the contract.   Gibson v. Owen, 115 Mo. 258. (2)    The statute makes the taxbill a lien on the property until the same is paid.   Sec. 5984, R. S. 1899. No limitation being fixed the general statute applies and the lien continued for five years.   The suit having been brought within that time the action was not barred.   Turner v. Burns, 42 Mo. App. 94.   (3)    The change in the contract was slight and did not interfere with the substantial rights of the defendants.   Cole v. Skrainka, 105 Mo. 303; Steffen v. Fox, 124 Mo. 630.   Assuming that the attempt to change the specifications as to the paving bricks was illegal, still there is no proof to overcome the presumption of law that the legal requirements were complied with and the charge for the paving is therefore valid.   Excelsior

Springs v. Etenson, 120 Mo. App. 229; Heman v. Gilliam, 171 Mo. 272. The contract is divisible and the charges for the paving and curbing are separately stated. If the court should find that either the charge for the paving or curbing was invalid it would not necessarily invalidate the whole taxbill. Dick & Gannon v. Riddle, 139 Mo. App. 584.

*Cook, Cummins & Dawson* for respondents.

(1) Contracts for paving streets, where the improvement is to be paid for in special taxbills against the abutting property, must be "let to the lowest and best bidder, upon plans and specifications, filed therefor by the city engineer, or other proper officer, with the city clerk—not less than one week's advertisement for bids thereon being made in some newspaper, published in the city." R. S. 1899, sec. 5989. (2) The statutory provision for competitive bidding is intended for the protection of the property-holder and to guard against the possibility of the award of such contract through favoritism or fraud. Substantial compliance with the statute is essential to bind the property. All who deal with these matters must see that there is no substantial departure from legal requirements. Rose v. Trestrail, 62 Mo. App. 352; West v. Porter, 89 Mo. App. 153. (3) Where municipal authorities are required to advertise for bids and let a contract to the lowest bidder, they are not at liberty to award a contract different from that advertised. 20 Am. and Eng. Ency. Law (2 Ed.), 1169; Galbreath v. Newton, 30 Mo. App. 380; City of Trenton v. Collier, 68 Mo. App. 491; Dickey v. Holmes, 109 Mo. App. 721; De Soto v. Shoeman, 100 Mo. App. 323; Heidelberg v. St. Francois Co., 100 Mo. 69; McCormick v. Moore, 134 Mo. App. 678. (4) Any material departure from the terms and conditions, upon which the bidding is had is in a sense a private one. To permit such, in the award of pub-

lic contracts, by public officers, would be to open wide the door for favoritism and defeat the thing which the law intended to safeguard, in requiring the contracts to be let upon bids on advertised specifications. Bridge Co. v. City of Durand (Wis.), 99 N. W. 608; Spalding v. Forsee, 109 Mo. App. 675. (5) Any material change found to be necessary, could only be made by another ordinance, and all prospective bidders should have been placed upon an equality by a new advertisement, upon proper written specifications. After the change in the specifications in this case, the city had no power to award the contract without readvertising, as required by statute. Spalding v. Forsee, 109 Mo. App. 676; Brick Mfg. Co. v. Hamilton, 51 Mo. App. 125; Bridge Co. v. City of Durand, 99 N. W. 608; City of Boonville v. Stephens, 95 S. W. 314; R. S. 1899, sec. 5989.

JOHNSON, J.—This is a suit on a special taxbill issued by Maryville, a city of the fourth class, in payment of the cost of grading, paving, guttering and curbing one of the public streets of that city. The answer pleaded several defenses, only one of which we find it necessary to consider. A jury was waived and the court after hearing the evidence rendered judgment for defendant. Plaintiff appealed.

It appears from the briefs that the court found against the validity of the taxbills, to which the one in suit belongs, on three grounds. We find the judgment should be sustained on one of these grounds and, passing the others, address our discussion to that one only.

The ordinance providing for the improvement, as well as the plans and specifications on file, provided that the paving should be of vitrified brick and that "the brick shall be of best quality of re-pressed vitrified paving brick of the usual dimensions, not less than

2¼ x 4x8 inches and not more than 3½ x 4x8 inches."
An advertisement for bids was made as provided in
section 5989, Revised Statutes 1899 (sec. 9411, R.
S. 1909) and after its completion and on the
day preceding the letting of the contract, the board
of aldermen amended the ordinance changing the mini-
mum dimensions of the brick from 2¼ x 4x8 inches to
2¼ x 3¾ x 7¾ inches. It is admitted that after the
change in the ordinance relative to bricks no adver-
tisement of any kind was made or had for bids on
the work. The contract for the work gave the dimen-
sions of the brick as specified in the amendment.

Referring to the curbing the original ordinance
provided "All stone curbs shall be joined with iron
dowel pins inserted between the stones four inches
from the top. The dowel pins are to be formed of
straight pieces of half-inch iron, cut into four inch
lengths and the holes in the stone shall be of such
size that the dowel pins will fit closely." It is admitted
that "during the progress of the work and after en-
tering into the alleged contract the board of alder-
men orally released the Likes Improvement Company
(the contractor) from performing the portion of the
work just referred to (i. e., putting in dowel pins)
without any ordinance, resolution or any other rec-
ord."

The curb stones were set without being doweled
together.

The statute provides (section 5989) that contracts
for street improvements "shall be let to the lowest
and best bidder upon plans and specifications filed
therefor by the city engineer or other officer designated
by the board of aldermen, with the city clerk, not less
than one week's advertisement for bids thereupon be-
ing made in some newspaper published in the city."
The statute must receive a construction that will give
effect to its obvious purpose which is that public work
of the character under consideration must be offered

to competitive bidding and that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants. The law does all that reasonably may be done to guard against the possibility of favoritism or fraud being practiced to the disadvantage of the honest competitor. In following the provisions of the statutes city governments should realize that next in importance to avoiding evil itself is the avoidance of the appearance of evil. It is quite as great a stimulus to real competition for those engaged in the contracting business who are honest to feel that all will have a fair field and that no favor will be shown as it is to give to all that kind of a field. Of course, as was held by the Supreme Court in Cole v. Skrainka, 105 Mo. 303, courts should not enforce "the extreme view 'that in order to recover for these local improvements, the plaintiff must show a literal compliance with all the provisions of the ordinances.' " In that case the variance between the depth of the rough granite blocks used and those called for in the ordinance was no greater than the undressed condition of the blocks naturally would make. The court said: "A literal compliance with this ordinance would require the blocks to be brought to the exact depth of eight inches. This can only be done by the use of a chisel and the proof is all one way, to the effect that this would more than double the cost of the blocks and render the use of them as paving stones impracticable."

This case—so much relied on by plaintiff—is no authority for the proposition that after the advertisement for bids has been made and without readvertising the specifications of work or material may be substantially changed or that the contractor may be released from the performance of a substantial and expensive requirement of the ordinance and contract. It is indispensable that "bidders shall start on a common ground and bid for the production or accomplishment

of the same identical result." [Bridge Co. v. Durand (Wis.), 99 N. W. 603.] We quote further from the case just cited:

"A second essential contained in the charter is that plans and specifications and terms, submitted as a basis for the bids, shall not be changed except in such manner as to affect all bidders and persons desiring to bid alike; that in case of a substantial change, either in the character of the structure or the terms of the proposed contract after the first competition shall have been completed, there shall be a second opportunity given to bid upon the new basis. [Wells v. Burnham, supra; McDermott v. Jersey City, 56 N. J. Law 273, 28 Atl. 424.] To permit one person to change his offer in consideration of a variation in the plans and specifications or proposed terms, and to award to him the contract as a result thereof, is the plainest kind of a violation of such a law as the one in question. An award made to a particular bidder through negotiations with him, the work to be done or the terms of the contract being privately varied upon the one side to secure a reduction in the offer to do the work upon the other, is not a letting to the lowest bidder upon an open competition. On the contrary, it is an award of work privately made upon special terms to produce something not submitted to public competition."

We give our approval to this doctrine and, applying it to the case in hand, say that the change in the specifications made by the board of aldermen, after the bidding had been closed and without a readvertisement, was a fraud in law on the rights of the property-owners and contractors. We cannot sanction the view that the change was immaterial. If it was immaterial to the successful bidder what was the necessity of providing for it at a time and in a manner so suspicious

of favoritism? If this contractor wanted the scope of the dimensions of the brick enlarged to include stock he had on hand or to conform to the usual product of his plant, how can we say that other contractors who did not think they could get the specifications changed for their benefit, were deterred from bidding because of their inability to furnish brick according to the specifications in the time required?

We are not holding there was any actual fraud in this case but we do say that if we approved the rule for which plaintiff contends we would open wide the door to fraud and favoritism. Full recognition should be accorded the presumption invoked by plaintiff of honesty and right acting on the part of public officers but that presumption has nothing to do with the purpose of the law to help public officers to be honest by removing from their path temptations and opportunities to be otherwise.

What we have said applies not only to the change in the specifications for the paving brick, but also to the unwarranted action of the council in releasing the contractor from the task of doweling the curbstones. That action of the council greatly lessened the cost of preparing and setting the curbing. Plaintiff virtually concedes the invalidity of the assessment for curbing and asks us to separate it from the assessment for paving on the ground that the two are "severable and divisible." [Dick v. Riddle, 139 Mo. App. 584.] But since we find the taxbill is invalid with respect to both paving and curbing it is not necessary to discuss the question of the divisibility of the contract.

The judgment is affirmed. All concur.