PATRICIA,BRECKENRIDGE,. CHIEF JUSTICE
Byrne & Jones Enterprises, Inc. d/b/a Byrne and-Jones Construction filed an action against Monroe City R-l School District and members of the Board of Education of Monroe City R-l School District (collectively, the school district) alleging that it was denied a fair and equal opportunity to compete in the bidding process for a public works contract to build an athletics stadium because of collusion and favoritism between the school district and another bidder,'ATG Sports, Inc. The trial court dismissed- Byrne & Jones’ petition after finding that Byrne & Jones, as an unsuccessful bidder, lacked standing to challenge the award of the contract because it did not bring the action as a taxpayer or in the interest of the public. Byrne & Jones appealed, asserting that it has standing to challenge the school district’s award of the contract because, as a participant in the competitive bidding process, it has a right to a fair and equal opportunity to compete for public contracts.
The trial court erred in dismissing Byrne & Jones’ petition because competitive bidding procedures for public contracts ensure that all who wish to bid have a fair and equal opportunity to compete in a field without favoritism or collusion. Unsuccessful bidders, therefore, have an interest in having a fair and equal opportunity to compete in the bidding process. Accordingly, because Byrne <& Jones alleged that it was denied a fair and equal opportunity to compete in the bidding process for the athletics stadium, Byrne & Jones had standing to challenge the award of the contract to ATG Sports.
Nevertheless, the trial -court did not err in dismissing Byrne & Jones’ petition because Byrne & Jones is not entitled to the relief requested in its petition. Byrne <&. Jones’ request for injunctive relief is moot in that, at the time of oral argument, the school district had let the contract to ATG Sports, which completed the athletics stadium that is now in use. Furthermore, Byrne & Jones -is not entitled to its bid preparation costs because section 177.086.2[1] does not create a cause of action for, or authorize the recovery of, such damages. Accordingly, this Court affirms the trial court’s judgment dismissing Byrne <&’ Jones’ petition.
*850 Factual and Procedural Background[2]
In 2013, the school district began planning to build a new athletics stadium at Monroe City High School. The school district subsequently contacted ATG Sports about the proposed stadium and requested ATG Sports’ assistance in designing the project. Throughout 2013, the school district emailed and had meetings with ATG Sports about the stadium project. Over the course of its communications with the school district, ATG Sports submitted unsealed plans and drawings of the proposed stadium to the school district and drafted the request for proposals that the school district later used to solicit bids for the project.
In the request for proposals, the school district sought base bids on the project as well as bids on 13 possible alternates or enhancements to the project. Byrne & Jones and ATG Sports were the only bidders on the project.
Byrne & Jones submitted the lowest base bid as well as the lowest total bid when factoring in all 13 of the proposed enhancements to the project. When the school district selected only seven of the 13 alternates, however, ATG Sports’ total bid was the lowest. In January 2014, the school district awarded the contract to ATG Sports.
On March 25, 2014, Byrne & Jones filed a declaratory judgment action against the school district. In count I of its petition,[3] Byrne & Jones alleged that the bidding procedures utilized by the school district did not allow all bidders a fair opportunity to compete on equal terms with ATG Sports. Byrne & Jones further alleged that the school district violated the competitive bidding process prescribed by law when it colluded with and acted with favoritism toward ATG Sports. In its prayer for relief, Byrne & Jones sought to enjoin the school district from entering into any contract with ATG Sports and requested an award of its costs,, attorney fees, and bid preparation costs in connection with the project.
The school district, subsequently, filed a motion to dismiss the petition. In its motion, the school district claimed that, as an unsuccessful bidder, Byrne & Jones lacked standing to challenge the award of the contract to another bidder because Byrne & Jones had no vested or protectable interest in the award of the contract. Byrne & Jones filed suggestions in opposition arguing that an unsuccessful bidder has standing to challenge a contract if the bidding procedures did not afford all bidders a fair and equal opportunity to compete.
On May 22, 2014, the trial court entered its judgment sustaining the school district’s motion to dismiss. The trial court determined that a low bidder has no standing under section 177.086, the school district’s competitive bidding procedures, to challenge the award of a contract to another bidder because the statute is clearly intended to safeguard the interest of the public, not the individual bidders. Therefore, the trial court concluded that Byrne & Jones lacked standing in that it was bringing the action as an unsuccessful bidder, not as a representative of Monroe City R-l School District taxpayers.
*851 Byrne & Jones appeals. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const, art. V, sec. 10.
Standard of Review
This Court reviews the grant of a motion to dismiss de novo. Ambers-Phillips v. SSM DePaul Health Ctr., 459 S.W.3d 901, 905 (Mo. banc 2015). “In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief.” Doss v. Doss, 822 S.W.2d 427, 428 (Mo. banc 1992). “This Court must affirm the. dismissal if it can be sustained on any ground supported by the motion to- dismiss.” Beck v. Fleming, 165 S.W.3d 156, 158 (Mo. banc 2005).
Standing of Unsuccessful Bidders
Byrne & Jones argues that it has standing to challenge the award of the contract to ATG Sports because it was denied a fair and equal opportunity to compete in the bidding process. To bring an action in a Missouri court, a party must have standing. Lebeau v. Commissioners of Franklin Cnty., Missouri, 422 S.W.3d 284, 288 (Mo. banc 2014). Standing is a threshold issue and “a prerequisite to a court’s authority to address substantive issues.” S.C. v. Juvenile Officer, 474 S.W.3d 160, 163 (Mo. banc 2015). Standing is a necessary component of a justiciable case that must be established prior to adjudication of a base’s merits. Schweich v. Nixon, 408 S.W.3d 769, 774 (Mo. banc 2013). Moreover, “[standing is an antecedent to the right to relief.” Manzara v. State, 343 S.W.3d 656, 659 (Mo. banc 2011). Therefore, prior to addressing the merits of Byrne & Jones’ claim and whether it was entitled to the requested relief, this Court must first determine whether Byrne & Jones had standing.
“In the context of a declaratory judgment action, the plaintiff must have a legally protectable interest at stake in the outcome of the litigation.” Id. A plaintiff has a legally protectable interest if “the plaintiff is directly and adversely affected by the action in question or if the plaintiffs interest is conferred by statute.” Id. (internal quotation omitted). “Missouri requires that a complainant be within the zone of interests to be protected or regu? lated by the statute or constitutional guarantee in question to bring an action thereunder.” Weber v. St. Louis Cnty., 342 S.W.3d 318, 323 (Mo. banc 2011).
Byrne & Jones asserts that it was denied' a fair and equal opportunity to compete in the bidding process for the school district’s athletics stadium project. Section 177.086 sets out- the competitive bidding procedures for all school districts regarding facility construction expenditures. Section 177.086.1 requires school districts constructing facilities that exceed $15 thousand dollars to publicly advertise, for bids “once a week for two consecutive weeks, in a newspaper of general circulation ... located within the city in which the school district is located.” All bids submitted to the school district must be sealed and in writing. Section 177.086.3. The school district cannot entertain bids that are not in “accordance with the specifications furnished by the district and all contracts shall be let to the' lowest responsible bidder complying with the terms of the letting, provided that the district shall have the right to reject any and all bids.” Section 177.086.2. Under this competitive bidding scheme, the ■ school district reserves the right to reject any and all bids, including the lowest bid submitted. State ex rel. Page v. Reorganized Sch. Dist. R *852 VI of Christian Cnty., 765 S.W.2d 317, 321 (Mo.App.1989); La Mar Constr. Co. v. Holt Cnty, R-II Sch. Dist., 542 S.W.2d 568, 570 (Mo.App.1976). Nevertheless, “rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason,” and “officials must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and corruption.” La Mar, 542 S.W.2d at 571.
The trial' court determined that Byrne & Jones lacked standing because an unsuccessful bidder has no standing under the competitive bidding procedures set out in section 177.086 to challenge the award of a contract to another bidder. The trial court found that competitive bidding statutes are intended to safeguard the interests of the public; thus, when fraud, corruption, or capriciousness occurs in the bidding process, the public, not the unsuccessful bidder, is the real moving party that is entitled to bring an action to enforce cancellation of the contract.
Generally, Missouri courts .have held that an unsuccessful bidder competing for a public contract has no special pecuniary interest in the award of the contract to it and, therefore, lacks standing to challenge the award of the contract to another bidder. See State ex rel, Johnson v. Sevier, 339 Mo. 483, 98 S.W.2d 677, 681 (1936); Page, 765 S.W.2d at 321; Metcalf & Eddy Servs., Inc. v. City of St. Charles, 701 S.W.2d 497, 499 (Mo.App.1985); La Mar, 542 S.W.2d at 570-71. As this .Court has explained, an unsuccessful bidder has no interest in having a public contract awarded to it for two reasons:
(1) Because [an] advertisement [is] not an offer of a contract, but an. offer to receive proposals for a contract, and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit and protection of the public and not the bidders.
Sevier, 98 S.W.2d at 679 (internal quotation omitted).
Recently, the United States Court of Appeals for the Eighth Circuit and the Missouri Court of Appeals acknowledged these general principles .regarding unsuccessful bidder standing; nevertheless, they have concluded -that, under Missouri law, unsuccessful bidders that challenge the award of the contract to another bidder on the basis that they were denied a fair and equal opportunity to compete do have standing to'assert their claims. See Metro. Express Servs., Inc. v. City of Kansas City, Mo, 23 F.3d 1367 (8th Cir.1994); Brannum v. City of Poplar Bluff, 439 S.W.3d 825, 829 (Mo.App.2014); Pub. Commc’ns Servs., Inc. v. Simmons, 409 S.W.3d 538, 547 (Mo.App.2013).
In Metropolitan Express, 23 F.3d at 1371, a potential bidder alleged that the city’s disregard of the proper competitive bidding process denied the potential bidder an opportunity to bid on a contract for an airport concession agreement. The federal district court concluded that the potential bidder lacked standing based on Missouri cases denying standing to unsuccessful bidders. Id. at 1370,- In reversing the district court’s judgment, the Eighth Circuit found that Missouri courts had yet to decide whether an unsuccessful bidder has standing to challenge a contract when the public contract allegedly was not awarded in accordance' with competitive bidding procedures. Id. at 1371. The Eighth Circuit .went on to explain that most jurisdictions have found that “an unsuccessful bidder has standing to challenge a contract if the bidding procedure did not permit all bidders to compete on equal terms.” Id. The Eighth Circuit then examined Missouri’s standing requirements and noted that Missouri courts have held that *853 ^competitive' bidding procedures for public contracts should ensure that all who' may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants.” Id. (internal quotation omitted); Based on such reasoning, the Eighth Circuit concluded that “an unsuccessful bidder that was denied a fair opportunity to bid on a public contract is within the zone of interests to be 'protected by competitive bidding requirements”, and, therefore, “has standing to challenge a contract- that -was not fairly bid.” Id.
Relying on Metropolitan Express, the Missouri Court of Appeals in Simmons, 409 S.W.3d at 547, held that an unsuccessful bidder that raised' claims regarding the fairness and lawfulness of the bidding'process had standing to challenge the award of a public contract. In Simmons, an unsuccessful bidder filed suit after the state awarded a contract for providing inmates with telephone services to-another bidder. Id. at 540-41.' On appeal, the successful bidder argued that the unsuccessful bidder lacked standing to file the suit. Id. at 545. The court of appeals acknowledged that an unsuccessful bidder “generally lacks standing to challenge the award of [a] contract to another bidder.” Id. at 546. Despite this general rule, however, the court favorably cited Metropolitan Express for the proposition that “an unsuccessful bidder has standing to challenge a contract award under Missouri.law if the bidding procedure did not permit all bidders to compete on equal terms.”- Id'. ■ (internal quotation omitted). The court then. concluded that the unsuccessful bidder had standing because it alleged that it-had been denied a fair opportunity.to bid and,-therefore, had challenged the fairness and lawfulness of the bidding-process.[4] Id, at 547. ■
Following Simmons, the Missouri Court of Appeals in Brannum, 439 S.W.3d at 830, again recognized that unsuccessful bidders have standing to challenge the award of á contract if all bidders were not permitted to compete on equal terms. In doing" so, the court stated that, ordinarily, an unsuccessful bidder “does not Have a special pecuniary interest in the award of [a] contract to it, and therefore generally lacks standing to challenge the award of the contract to another bidder.” Id. at 829 (internal quotation omitted). Relying on Simmons, however, the court found that, under limited circumstances, .Missouri courts have “recognized a losing bidder’s standing tó challenge the award, óf a public contract .,. where a public’ entity’s bidding procedure did not permit all bidders to compete on equal terms; or ... where the lowest bid is rejected fraudulently, corruptly, capriciously, or without rqason.” Id. at 830 (internal quotation omitted).[5]
*854 As this recent precedent establishes, an unsuccessful bidder typically has no interest in having a public contract awarded to it and, therefore, lacks standing when challenging the award of a public contract to another bidder on such grounds. Nonetheless, one purpose of competitive bidding statutes is to ensure “that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants.” City of Maryville ex rel. Citizens’ Nat’l Bank of Des Moines, Iowa v. Lippman, 151 Mo.App. 447, 132 S.W. 47, 48 (1910). “It is quite as great a stimulus to real competition for those engaged in the contracting business who are honest to feel that all will have a fair field and that no favor will be shown[.]” Id. Accordingly, this Court is persuaded that bidders have a legally protectable interest in a fair and equal bidding process and are within the zone of interests that competitive bidding statutes seek to regulate. An unsuccessful bidder, therefore, has standing to challenge the award of a public contract to another bidder on grounds that it was denied a fair and equal opportunity to compete in the bidding process. Brannum, 439 S.W.3d at 830; Simmons, 409 S.W.3d at 547.
The school district argues that Simmons and Brannum should not be followed because they conflict with prior precedent in Sevier and La Mar that only taxpayers have standing to challenge the award of a public contract because the purpose of public bidding laws is to protect the public. The holdings of Sevier and La Mar, however, do not conflict with the proposition that unsuccessful bidders have' standing to challenge a public contract on grounds that they were denied a fair and equal opportunity to compete in the bidding process.
In Sevier, an unsuccessful bidder sought a writ of mandamus compelling the award of a public contract to it because it was the lowest bidder. 98 S.W.2d at 678. In finding that the unsuccessful bidder was not entitled to mandamus relief, this Court held that an unsuccessful bidder lacked a private pecuniary interest in the contract and, therefore, could not bring an action to compel the awarding of a public contract to it. Id. at 681. Likewise, the unsuccessful bidder in La Mar challenged the award of a public contract on grounds that, as the lowest responsible bidder, it was entitled to the contract. 542 S.W.2d at 570. In affirming the dismissal of the action,, the court of appeals held that the unsuccessful bidder was not deprived of anything to which it was legally entitled and, therefore, failed to state a cause of action. Id. at 570-71. Accordingly, Sevier and La Mar stand for the proposition that an unsuccessful bidder cannot bring an action to compel the awarding of a public contract to it because the unsuccessful bidder has no clear, legal right or interest in having a competitively bid public contract awarded to it. Therefore, the holdings in Sevier and La Mar do not conflict with Simmons and Brannum, in which the unsuccessful bidders sought a-fair and equal opportunity to compete in the bidding process.
The school district argues that, regardless of whether Byrne & Jones sought the award of the contract, Byrne & Jones still lacks standing because it did not bring the action in the interest of the public or as a taxpayer. In support of its argument, the school district relies upon the following language in La Mar:
The rejection of the lowest bid must not ■ be made fraudulently, corruptly, capriciously or without reason. The officials must exercise and observe good faith and accord all bidders just consider *855 ation, avoiding favoritism and corruption. If any of these standards are violated the public, as the real, moving party, may bring mandamus to enforce cancellation of the contract and its award to the lowest responsible bidder.
Id. at 571. The school district also points to language in Sevier that if a public contract is not entered into in good faith, “the law affords taxpayers a complete remedy for its cancellation, but private individuals, as unsuccessful bidders, cannot maintain a suit in their own behalf to cancel the award as made and compel the awarding of the contract to them.” 98 S.W.2d at 681.
Judicial decisions “must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision.” Parker v. Bruner, 683 S.W.2d 265, 265 (Mo. banc 1985) (internal quotation omitted). Although the school district reads the language in Sevier and La Mar broadly to mean that only taxpayers have standing to challenge the award of a public contract, such language was used in the context of dispelling the notion that the unsuccessful bidder, as the lowest or best bidder, has some statutory right or interest in having the contract awarded to it. If the courts’ language was intended to address circumstances beyond the facts of those cases, it is dicta. Id. Here, Byrne & Jones is not alleging that it has some legal right or interest in having the contract awarded to it. It- contests the award of the contract on grounds that, due to collusion and favoritism, it was not afforded a fair and equal opportunity to compete in the bidding process. Such arguments were not raised in Sevier or La Mar, nor has the school district cited any case from this Court finding that an unsuccessful bidder lacked standing to challenge the bidding process and the contract awarded therefrom, on such grounds.
Accordingly, all bidders have a legally protectable interest in a fair and equal bidding process and are within the zone of interests that the school district’s competitive bidding statutes seek to regulate in that competitive bidding statutes are designed to ensure that all bidders have 'a fair and equal opportunity to compete in the bidding process. See Brannum, 439 S.W.3d at 830; Simmons, 409 S.W.3d at 546-47; City of Maryville, 132 S.W. at 48. Therefore, unsuccessful bidders that are denied a fair and equal opportunity to compete in a public bidding process have standing to challenge’ the award of the contract. Accordingly, Byrne & Jones had standing to challenge the school district’s award of the contract to ATG. Sports in that Byrne & Jones alleged that the school district’s favoritism toward and collusion with ATG Sports prevented Byrne & Jones 'from having a fair and equal opportunity to compete.
The Requested Relief
In arguing that it had standing to challenge the award of.the contract, Byrne & Jones asserted that it was entitled to injunctive and monetary relief. In its petition, Byrne & Jones requests that the school district be enjoined “from entering into any contract with ATG Sports .,. for the design and construction of the stadium facility project[.]” As conceded at oral argument, however, Byrne & Jones did not seek a preliminary injunction or temporary restraining order to prevent the school district from entering into the contract with ATG Sports. The school district and ATG Sports, therefore, entered into a contract that resulted in ATG Sports building and completing the athletics stadium that *856 is currently in use at Monroe City High 'School.
It would be impossible for this Court to enjoin the school district from entering into a contract with ATG Sports because such a contract was, in fact, entered into and the project has since been completed. Mootness is a threshold question that may be addressed by this Court sua sponte. State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001). “When an event occurs that makes a court’s decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed.” Id. (internal quotation omitted). Byrne & Jones’ request for injunctive relief, therefore, is moot. See id.
Additionally,, Byrne & Jones sought an award of its bid preparation costs. Byrne & Jones argues that it should be allowed to recover its bid preparation costs because it would encourage more bidders to participate in the bidding process by ensuring public entities afford bidders an equal opportunity to compete that would, in turn, benefit the public interests that section 177.086.2 seeks to protect. By-requesting its bid preparation costs, Byrne & Jones is essentially asking this Court to create a new cause of action. Section 177.086.2 provides no authority for a new cause of action or recovery of such damages. This Court will 'not interpret a statute to' establish a private cause of action without cléar implication of the legislature’s intent to do so. Dierkes v. Blue Cross & Blue Shield of Mo., 991 S.W.2d 662, 667 (Mo. banc 1999). Byrne & Jones, therefore, is not entitled to recover its bid preparation costs under the ■ statute.[6] Accordingly, even affording the pleadings their broadest intendment and treating all facts alleged as true, Byrne & Jones is.still not entitled to the relief requested in the petition. Therefore, the trial court did not err in dismissing Byrne & Jones’ petition for a declaratory judgment.
Conclusion
Byrne & Jones had standing to challenge the award of the contract to ATG Sports because it alleged that it was denied a fair and equal opportunity to compete in the bidding process for the stadium project. Nevertheless, the trial court did not err in dismissing Byrne & Jones’ petition because Byrne & Jones was not entitled to the requested relief. Consequently, this Court affirms the trial court’s judgment.
Stith, Draper, Teitelman and Russell," JJ., concur; Wilson, J., concurs in result in separate opinion filed; Fischer, J., concurs in separate opinion of Wilson, J.

. When reviewing a motion to dismiss, this Court assumes that the facts alleged in the petition are true. Lebeau v. Commissioners of Franklin Cnty., Missouri, 422 S.W.3d 284, 288 (Mo. banc 2014).

. Byrne & Jones asserted two other claims in its petition that were also dismissed by the trial court. On appeal, Byrne & Jones does not contest the dismissal of its other two claims, so this Court does not address them.

. While the trial court acknowledged the holding in Simmons that unsuccessful bidders have standing under limited circumstances, it found the present case distinguishable in that Simmons did not .involve the application or interpretation of the competitive bidding scheme set out in section 177.086.2. The court’s holding in Simmons, however, was not premised on- the competitive bidding statute at issue. Rather, as previously explained, the court in Simmons found the unsuccessful bidder had standing because the unsuccessful bidder alleged it was denied a fair and equal opportunity to compete in the bidding process. 409 S.W.3d at 547.

. After explaining that unsuccessful bidders have standing to challenge the award of a public contract under limited circumstances, the court of appeals in- Brannum went on to find that file unsuccessful bidder lacked standing because the record established that the-unsuccessful bidder had a fair and equal op-pórtunity to Compete. 439 S.W.3d at 831. In dping so, the court erroneously conflated the issue of standing with deciding the merits of the unsuccessful bidder’s claim that it had been denied a fair and equal opportunity to compete. Id. at 831. The court in Brannum, therefore, incorrectly found that the unsuccessful ■ bidder lacked standing. It correctly *854 found that the unsuccessful bidder’s claim failed on its merits.

. Byrne & Jones further relies on cases from other jurisdictions in which courts have permitted the recovery of bid preparation costs. See Owen of Georgia, Inc. v. Shelby Cnty., 648 F.2d 1084, 1095 (6th Cir.1981); Meccon, Inc. v. Univ. of Akron, 126 Ohio St.3d 231, 933 N.E.2d 231, 232 (Ohio 2010); Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth., 23 Cal.4th 305, 96 Cal.Rptr.2d 747, 1 P.3d 63, 71-72 (2000); N. Twin Builders, LLC v. Town of Phelps, 334 Wis.2d 148, 800 N.W.2d 1, 2 (Wis.App.2011). The majority of these cases, however, are distinguishable from the present case in that monetary damages’ were awarded because the trial court wrongfully denied the unsuccessful bidder’s timely request for injunctive relief, see Mec-con, 933 N.E.2d at 235, or the unsuccessful bidder was entitled to monetary relief under a theory of promissory estoppel. See Owen, 648 F.2d at 1096; Kajima/Ray, 23 Cal.4th at 319, 96 Cal.Rptr.2d 747, 1 P.3d 63.