STATE of Missouri EX REL. MIS-
SOURI COALITION FOR THE EN-
VIRONMENT, et al., Appellants,

v.

JOINT COMMITTEE ON AD-
MINISTRATIVE RULES,
et al., Respondents.

No. SC 95546

Supreme Court of Missouri,
en banc.

Opinion issued April 25, 2017

Rehearing Denied June 27, 2017

The coalition was represented by Henry B. Robertson and Bruce A. Morrison of the Great Rivers Environmental Law Center in St. Louis, (314) 231-4181.

The joint committee and the governor were represented by Brandon D. Laird of the attorney general's office in Jefferson City, (573) 751-3321; the public service commission was represented by Jennifer Leigh Heintz and Shelley E. Brueggemann of the commission in Jefferson City, (573) 751-8701; and the secretary of state was represented by Jose S. Caldera and Andrew Adams of the secretary of state's office in Jefferson City, (573) 751-2418.

Laura Denvir Stith, Judge

Plaintiffs appeal a judgment dismissing for mootness their action challenging the Joint Committee on Administrative Rules' (JCAR) authority to disapprove the "geographic sourcing" provisions of a 2010 rule promulgated by the Public Service Commission (PSC). Plaintiffs argue they are entitled to an order compelling the Secretary of State to issue a revised version of the 2010 rule that includes the geographic sourcing provisions. Alternatively, they argue the Court should require these provisions to be added to the 2015 rule that superseded the 2010 rule.

This Court affirms the dismissal on mootness grounds without reaching the question of JCAR's authority to disapprove the portion of the 2010 rule in question. The PSC never published the geographic sourcing provisions at issue in this case, and they never became part of the 2010 rule. Moreover, while this case was pending in the trial court, the PSC issued an amended 2015 rule that did not include the geographic sourcing provisions of the 2010 rule in question here, and no challenge has been filed as to the 2015 rule. It is within the discretion of the PSC and the Secretary of State to issue an amended 2015 rule to supersede the 2010 rule. In light of the adoption of the 2015 rule, no purpose would be served by addressing JCAR's actions regarding a superseded prior rule. The trial court's judgment dismissing this case as moot is affirmed.

## I. BACKGROUND

On November 4, 2008, the Missouri electorate approved Proposition C, which established renewable energy standards for investor-owned utilities. Proposition C later was codified as sections 393.1020-393.1030, RSMo Supp. 2010.[1] In January 2010, the PSC proposed regulations implementing Proposition C's renewable energy standards. The proposed regulations included provisions requiring electric corporations to achieve escalating percentages of their electricity sales with power obtained from renewable energy sources. Under the proposed regulations, utilities could demonstrate compliance with the statute by registering and retiring a sufficient number of "renewable energy credits"[2] representing renewable energy generated or purchased. 4 CSR 240–20.100(3). Subsections 240–20.100(2)(A) and (2)(B)2 of the proposed regulations, referred to as the "geographic sourcing provisions,"

---

1. For more detail concerning section 393.1030 and the renewable energy standards contained in it, *see State ex rel. Missouri Energy Development Ass'n v. Public Service Comm'n, 386 S.W.3d 165, 170 (Mo. App. 2012).*

2. Under the rule, a "renewable energy credit," or "REC," is a "tradeable certificate of proof that one megawatt-hour of electricity has been generated from renewable energy sources." § 393.1025(4).

would have required the renewable energy credits to represent electricity that was "sold to Missouri customers." These geographic sourcing provisions form the focus of Plaintiffs' lawsuit.[3]

When proposing a new rule, an agency must follow certain rulemaking procedures set out in title 36, chapter 536, RSMo. *See* *§§ 536.021.1, 386.125*. The agency must first file a notice of proposed rulemaking concurrently with the Secretary of State and with JCAR, and the notice shall be published in the Missouri Register as soon as practicable. *§§ 536.021, 536.024.2, 536.073.5*. The notice of proposed rulemaking must contain the entire text of the proposed rule and should specify a time-frame not less than 30 days after publication of the notice in the Missouri Register within which anyone may file a statement in support of or in opposition to the proposed rulemaking. *§ 536.021.2*. The agency may also solicit comments from the public about the proposed rule before it files its final order of rulemaking. *§ 536.026*. Normally, within 90 days after the end of the notice and comment period, "the state agency proposing the rule shall file with the Secretary of State a final order of rulemaking either adopting the proposed rule, with or without further changes, or withdrawing the proposed rule, which order of rulemaking shall be published in the

Missouri Register." *§ 536.021.5*. But the filing agency must first submit the final order of rulemaking to JCAR, and it cannot file the order with the Secretary of State until 30 days after such final order has been received by JCAR. *§ 536.024.3*. During this 30-day period, JCAR may hold hearings on the final order of rulemaking. *Id.*

No proposed rule can become effective without submission to JCAR, which has the authority to disapprove a rule in whole or in part. *§ 536.073*. JCAR shall report any disapproved portion to the Missouri Senate and House of Representatives, and that portion shall not take effect if JCAR's action is ratified by resolution adopted in each house within 30 legislative days after JCAR's disapproval. *§ 536.073.9*. Any portion of a proposed rule that is disapproved shall not formally be filed with the Secretary of State by the proposing agency or published by the agency in the Missouri Register. *§ 536.073.8*.

In this case, in January 2010, the PSC filed notice of the proposed rule with the Secretary of State and with JCAR in accordance with section 536.073.5. The text of this proposed rule included the geographic sourcing provisions, and it was published in the Missouri Register for notice and comment in February 2010 as

---

3. These subsections stated:

 (A) Electric energy or RECs associated with electric energy are eligible to be counted towards the RES requirements only if the generation facility for the renewable energy resource is either located in Missouri or, if located outside of Missouri, the renewable energy resource is sold to Missouri electric energy retail customers. For renewable energy resources generated at facilities located outside Missouri, an electric utility shall provide proof that the electric energy was sold to Missouri customers.
 (B) The amount of renewable energy resources or RECs associated with renewable energy resources that can be counted to-

wards meeting the RES requirements are as follows:
 ... 2. If the facility generating the renewable energy resources is located outside Missouri, the allowed amount is the amount of megawatt-hours generated by the applicable generating facility that is sold to Missouri customers. For the purposes of subsections (A) and (B) of this section, Missouri electric energy retail customers shall include retail customers of regulated Missouri utilities as well as customers of Missouri municipal utilities and Missouri rural electric cooperatives.
*35 Mo. Reg. 365 (Feb. 16, 2010)*.

required by section 536.021.1. *35 Mo. Reg. 365 (Feb. 10, 2010)*. After the comment period ended in June 2010, the PSC filed with JCAR a final order of rulemaking, including the two geographic sourcing provisions, pursuant to section 536.024. JCAR held hearings concerning the proposed rule and ultimately voted to disapprove the two geographic sourcing provisions on July 1, 2010. JCAR also sent a letter to the Secretary of State informing the Secretary of its action. A few days later, the PSC submitted a revised 2010 final order of rulemaking with the Secretary of State and with JCAR. The transmittal letter stated that as to the two geographic sourcing provisions, "in accordance with section 536.073.8, the Commission is not filing those sections for publication" with the remainder of the rule, so those provisions would not become effective. Instead, uncertain whether at some later point provisions addressing geographic sourcing might be needed, the PSC stated it was asking the Secretary of State to show subsections (2)(A) and (2)(B)2 as "reserved" for later use "in the event the Commission decides to amend the rule."

On August 16, 2010, the Secretary of State published the revised final 2010 rule in the Missouri Register. *35 Mo. Reg. 1183 (Aug. 16, 2010)*. That published 2010 rule did not contain the geographic sourcing provisions. The revised 2010 rule became effective September 30, 2010. *4 CSR 240-20.100 (2010)*.

At the end of January 2011, after the revised 2010 rule had already become effective, the PSC issued an "Order Withdrawing Geographic Sourcing Provisions (2)(A) and (2)(B)2 of 4 CSR 240–20.100

Pursuant to the Actions of JCAR" and stating that it had not presented the provisions to the Secretary of State and would not do so in the future. It further stated, "The Commission is withdrawing those provisions and again requests that [the geographic sourcing provisions] not be published or become effective." The order was not appealed and was published in the Missouri Register. *36 Mo. Reg. 1002-1007 (Apr. 1, 2011)*.

When the legislature reconvened for the 2011 session, it passed Senate Concurrent Resolution No. 1, which disapproved the withdrawn geographic sourcing provisions. The Governor received the resolution but sent a letter to both chambers, stating he did not sign or veto it because the PSC order withdrawing the geographic sourcing provisions rendered the resolution moot.[4] The concurrent resolution and the letter from the Governor were published in the 2011 Missouri Register. *36 Mo. Reg. 1008-1011 (Apr. 1, 2011)*.

More than two and one-half years later, in October 2013, Missouri Coalition for the Environment, Missouri Solar Applications, LLC, and Thomas J. Sager initiated an action against the Secretary of State, JCAR, the PSC, and the Governor, challenging JCAR's authority to disapprove the portions of the 2010 rule as first proposed and promulgated by the PSC. Plaintiffs recognized that sections 536.019, 536.021, and 536.073 authorize JCAR to disapprove any rule or portion of any rule filed by an agency but argued those statutes violate the separation of powers clause set out in article II, section 1, of the Missouri Constitution[5] to the extent they

---

**4.** This opinion does not address the effect of or need for the formal withdrawal or whether there it was necessary for the legislature to adopt a concurrent resolution in light of the fact that subsections (2)(A) and (2)(B)2 had

been withdrawn and the final 2010 rule published without them.

**5.** Article II, section 1 of the Missouri Constitution provides: "The powers of government shall be divided into three distinct depart-

allow a legislative committee to suspend and veto administrative rules. Defendants argued the case was moot because the PSC voluntarily withdrew the geographic sourcing provisions before the 2010 rule was published. They also cite *Missouri Coalition for the Environment v. Joint Committee on Administrative Rules, 948 S.W.2d 125, 134 (Mo. banc 1997)*, and allege any constitutional issue was resolved by section 536.073.9's requirement that the legislature pass a concurrent resolution approving any disapproval which shall be submitted to the Governor.

The parties filed cross-motions for summary judgment. The trial court initially granted the PSC's motion. Plaintiffs appealed the decision to this Court, which dismissed the appeal because the judgment was not final as to all parties. *Order Dismissing Appeal, State ex rel. Mo. Coal. for the Env't v. Joint Comm. on Admin. Rules, Case No. SC95100 (Mo. banc Nov. 17, 2015).* In the meantime, the PSC was undertaking new rulemaking in accordance with chapter 536's rulemaking procedures. The proposed new rulemaking never contained geographic sourcing provisions. *40 Mo. Reg. 538-554 (May 1, 2015).* After an appropriate notice and comment period and submission to JCAR and the Secretary of State, the 2015 rule was published in the Code of State Regulations on October 31, 2015 and took effect on November 30, 2015. *40 Mo. Reg. 1499 (Oct. 15, 2015), 4 CSR 240–20.100 (2015).*[6]

Because the 2015 rule did not have, and never had, geographic sourcing provisions, and the 2010 rule had been superseded and was no longer in effect, after publication of the 2015 rule, the PSC moved the circuit court to dismiss the action as moot. On January 11, 2016, the circuit court granted the PSC's motion.

Believing the trial court erred in ruling the case moot, Plaintiffs appeal directly to this Court. They argue the statute permitting JCAR to disapprove of all or part of a proposed rule violates the separation of powers provisions of article I section 3 of the Missouri Constitution. They ask this Court to order the Secretary of State to republish the 2015 rule with the geographic sourcing provisions that once had been proposed by the PSC for inclusion in the 2010 rule.

## II. STANDARD OF REVIEW

Appellate courts review the grant of a motion to dismiss de novo. *Byrne & Jones Enters. v. Monroe City R-1 Sch. Dist., 493 S.W.3d 847, 851 (Mo. banc 2016).* "In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Id.* (citation and quotation marks omitted). "This Court must af-

---

ments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

**6.** The new renewable energy standards rule retained the same numbering as the former rule, which meant it continued to reserve

subsections (2)(A) and (2)(B)(2). It contains the same note concerning these provisions as the 2010 final rule, explaining JCAR's disapproval, the PSC's order withdrawing the provisions, and the 2011 Senate Concurrent Resolution No. 1. At oral argument, the parties indicated these subsections remained reserved so, should this Court order the inclusion of the geographic sourcing provisions in the revised rule, there would be a location for them to be added.

firm the dismissal if it can be sustained on any ground supported by the motion to dismiss." *Id.* (citation and quotation marks omitted). Mootness is a legal issue reviewed de novo. *See State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001)*; *Mercy Hosps. E. Cmtys. v. Mo. Health Facilities Review Comm., 362 S.W.3d 415, 417 (Mo. banc 2012)*.

## III. THE ACTION PROPERLY WAS DISMISSED AS MOOT

■ A trial court properly dismisses a cause of action as moot "when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *C.C. Dillon Co. v. City of Eureka, 12 S.W.3d 322, 325 (Mo. banc 2000)* (quotation omitted). "When an event renders a court's decision unnecessary, such as where an enactment supersedes the statute on which the litigants rely to define their rights, an appeal no longer represents an actual controversy and should be dismissed." *Humane Soc'y of the U.S. v. State, 405 S.W.3d 532, 536 (Mo. banc 2013)*.

■ Here, Plaintiffs challenge the constitutional validity of JCAR's authority to disapprove of proposed administrative rules such as the two geographic sourcing provisions included in the first proposed version of the 2010 rule. Those standards were not included in the published 2010 rule after the PSC voluntarily withdrew them before action by the legislature or Governor to approve JCAR's disapproval. Whether the PSC action mooted the controversy about JCAR's authority, *see Mo. Energy Dev. Ass'n, 386 S.W.3d at 175-76*,

and whether JCAR had authority to disapprove the geographic sourcing provisions, need not be resolved by this Court because, while this case was pending at the trial level, the PSC in 2015 amended and superseded the 2010 rule in its entirety with a 2015 renewable energy standards rule, which took effect November 30, 2015. No part of the 2015 rule's text includes, or ever has included, the geographic sourcing standards.[7] Disapproval by this Court of JCAR's actions in regard to the 2010 rule accordingly would not affect any live controversy. The 2010 rule that plaintiffs seek this Court to order to be revised to include the geographic sourcing provisions no longer is in effect. This suit does not challenge the 2015 rule, so the validity of the 2015 rule is not before the Court.

■ This Court has long recognized that, when a challenged provision is superseded, the challenge becomes moot. For instance, in *Missouri Municipal League v. State, 465 S.W.3d 904, 906 (Mo. banc 2015)*, the plaintiff sought declaratory judgement that a statute was invalid because its bill-passage violated procedural requirements in the Missouri Constitution. While the case was being litigated, however, the General Assembly repealed and replaced the statute challenged by the plaintiff. This Court found the plaintiff's procedural claims were moot because they were based on allegations concerning the enactment of the old statute. This meant that "no matter what declaration this Court might make about the validity of [the challenged statute] enacted therein, that declaration would have no practical effect going forward. ... Instead, those rights and obligations will be governed by

---

7. JCAR notes that any person or entity may comment on a proposed rule during the no-

tice and comment period. *§ 536.021.*

the provisions of [the newly enacted statute]." *Id.*[8]

The same reasoning applies here. While Plaintiffs have challenged the validity of the 2010 rule, that rule has been superseded and is no longer in effect. Whether JCAR had the authority to disapprove of the geographic sourcing provisions in the superseded 2010 rule, therefore, is moot, as resolution of that issue would have no real-world effect. *Mo. Energy Dev. Ass'n, 386 S.W.3d at 175-77.*

Plaintiffs argue the controversy is not moot because the reason the geographic sourcing provisions were not included in the 2015 rule was that the PSC knew JCAR would disapprove if the 2015 rule included the geographic sourcing provisions that had once been proposed in the 2010 rule, and, therefore, JCAR's disapproval still has an effect on the 2015 rule. Plaintiffs further argue this Court can "issue effectual relief by order of mandamus compelling the Secretary of State to publish the geographic sourcing provisions."

 As this Court noted in *State ex rel. Missouri Growth Association v. State Tax Commission, 998 S.W.2d 786, 788 (Mo. banc 1999)*, mandamus applies only to ministerial acts; it cannot be used to compel a public official to perform a discretionary act. Although the PSC is required to "make whatever rules are necessary to enforce the renewable energy standard," *§ 393.1030.2*, there "is still no ministerial duty to promulgate the specific rule in question because conceivably there is a host of different rules that could accomplish [the statute's] mandate." *Mo. Growth Ass'n, 998 S.W.2d at 789.* The PSC exer-

cised its discretion in drafting an amended 2015 rule and chose not to include geographic sourcing provisions. "Missouri courts have long recognized that when the decision involves the exercise of regulatory discretion, the PSC is delegated a large amount of discretion, and many of its decisions necessarily rest largely in the exercise of its own judgment." *State ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n, 165 S.W.3d 160, 164 (Mo. banc 2005)* (quotation omitted). While Plaintiffs speculate as to what caused the PSC to exercise its discretion in that way, they cite no authority that the PSC's motivations affect the validity of the rule so adopted. Moreover, as noted, the validity of the 2015 rule was not challenged below or in this Court and cannot affect the mootness of the challenge to the 2010 rule that is at issue in this case.

## IV. CONCLUSION

This Court affirms the trial court judgment dismissing this case as moot.

Breckenridge, C.J., Fischer, Draper and Russell, JJ., and Hess, Sp.J., concur.

Wilson, J., not participating.

---

**8.** *See also Humane Soc'y, 405 S.W.3d at 535-36* (affirming the trial court judgment finding the plaintiffs' claim was moot because the plaintiffs had alleged a procedural defect in the enactment of a statute that had since been repealed and reenacted).